[ORAL ARGUMENT NOT YET SCHEDULED]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————

No. 22-5252

————————

SHAWN MUSGRAVE,

Appellant,

v.

MARK WARNER, et al.,

Appellees.

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————

**BRIEF OF APPELLEES**

————————

MORGAN J. FRANKEL
morgan_frankel@legal.senate.gov
D.C. Bar #342022
Senate Legal Counsel

PATRICIA MACK BRYAN
D.C. Bar #335463
pat_bryan@legal.senate.gov
Deputy Senate Legal Counsel

THOMAS E. CABALLERO
thomas_caballero@legal.senate.gov
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel)
(202) 224-3391 (fax)

April 17, 2023

Counsel for Appellees Senator Mark
Warner and the Senate Select
Committee on Intelligence

## CERTIFICATE OF APPELLEES
## AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

This appeal arises from a civil action in the district court.  Case No. 21-cv-02198 (BAH).  Plaintiff-Appellant is Shawn Musgrave.  Defendants-Appellees are Senator Mark Warner, in his official capacity as Chairman of the Senate Select Committee on Intelligence, and the Senate Select Committee on Intelligence.   No *amici curiae* appeared and no parties intervened below or, to date, in this Court.

### B. Ruling Under Review

Plaintiff appeals from the Order and accompanying Memorandum Opinion issued on September 15, 2022, by the Honorable Beryl A. Howell, then-Chief Judge of the U.S. District Court for the District of Columbia.  Docket Nos. 23 & 24, No. 21-cv-02198 (BAH) (D.D.C.).  That Order granted the Defendants' motion to dismiss Plaintiff's complaint.

### C. Related Cases

This case has not previously been before this Court or any court other than the district court.  Counsel for Defendants-Appellees are unaware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

GLOSSARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.    Responsibilities of the Senate Select
               Committee on Intelligence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2     SSCI's Study of the Central Intelligence
               Agency's Detention and Interrogation Program. . . . . . . . . . . 5

        3.    FOIA Litigation in This Circuit Over the
               SSCI Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        4.    Plaintiff's Request for the SSCI Report and
               Filing of This Lawsuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.    Plaintiff's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.    Proceedings Below . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    E.    The District Court's Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

I.    THE DISTRICT COURT CORRECTLY HELD THAT THE
      SPEECH OR DEBATE CLAUSE BARS PLAINTIFF'S
      SUIT TO COMPEL SSCI AND ITS CHAIRMAN TO
      PRODUCE THE REPORT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.   THE DISTRICT COURT CORRECTLY HELD THAT
      SOVEREIGN IMMUNITY PRECLUDES THIS SUIT. . . . . . . . . . . . . . . 28

      A.    The *Larson-Dugan* Exception Does Not Apply To
            Common-Law-Right-of-Access Suits Against Senate
            Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

      B.    No Duty To Disclose The Report Exists Under The
            Common Law Right Of Access To Public Records,
            And, Therefore, Senate Defendants Enjoy Sovereign
            Immunity From Plaintiff's Suit. . . . . . . . . . . . . . . . . . . . . . . . . . 35

            1.    The Common Law Right of Access to Public
                  Records Does Not Apply to Documents of a
                  House of Congress. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

            2.    The District Court Correctly Held That the
                  Report Is Not Subject to Compelled Disclosure
                  Under the Common Law Right of Access
                  to Public Records. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

III.  THE DISTRICT COURT DID NOT ABUSE ITS
      DISCRETION IN DENYING PLAINTIFF'S REQUEST
      FOR DISCOVERY AND AN EVIDENTIARY HEARING. . . . . . . . . . . 47

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. CIA*, 823 F.3d 655 (D.C. Cir. 2016) . . . . . . . . . . . . . . . . . . 7, 8, 37, 45, 48

*Al-Nashiri v. Bush*, No. 08-cv-1207 (D.D.C. Dec. 28, 2016) . . . . . . . . . . . . . 7, 27

*Barenblatt v. United States*, 360 U.S. 109 (1959) . . . . . . . . . . . . . . . . . . . . . . 22, 47

\* *Brown & Williamson Tobacco Corp. v. Williams*,
62 F.3d 408 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 14, 18, 19, 24, 25, 48

*Buaiz v. United States*, 471 F. Supp. 2d 129 (D.D.C. 2007) . . . . . . . . . . . . . . . . 29

*Center for Nat'l Security Studies v. U.S. Dep't of Justice*,
331 F.3d 918 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36, 45

*CIA v. Sims*, 471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Chamber of Commerce v. Reich*, 74 F. 3d 1322 (D.C. Cir. 1996) . . . . . . . . . 32, 33

*Consumers Union of the United States, Inc. v. Periodical
Correspondents' Ass'n*, 515 F.2d 1341 (D.C. Cir. 1975) . . . . . . . . . . . . . . 20

*Cox v. Dep't of Justice*, 504 F. Supp. 3d 119 (E.D.N.Y. 2020) . . . . . . . . . . . . . . . 7

*Cox v. Dep't of Justice*, 17-cv-3329 (E.D.N.Y. Mar. 30, 2022),
*appeal docketed*, No. 22-1202 (2d Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dep't of the Army v. Federal Labor Rel. Auth.*,
56 F.3d 273 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

\* Cases and authorities chiefly relied upon are denoted with an asterisk.

*Dep't of the Navy v. Egan*, 484 U.S. 518 (1988) . . . . . . . . . . . . . . . . . . . . . . . 44, 45

*Dhiab v. Trump*, 852 F.3d 1087 (D.C. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . 17, 44

\* *Doe v. McMillan*, 412 U.S. 306 (1973) . . . . . . . . . . . . . . 10, 11, 14, 20, 21, 22, 46

*Dugan v. Rank*, 372 U.S. 609 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 31

\* *Eastland v. U.S. Servicemen's Fund*,
421 U.S. 491 (1975) . . . . . . . . . . . . . . 11, 14, 18, 19, 20, 21, 22, 24, 26, 48

*Exxon Corp. v. FTC*, 589 F.2d 582 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . 39

*FDIC v. Meyer*, 510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

\* *Goland v. CIA*, 607 F.2d 33 (D.C. Cir. 1978), *vacated in part on other grounds*, 607 F.2d 367 (D.C. Cir. 1979) (per curiam) . . . . . . . 8, 16, 37

\* *Gravel v. United States*, 408 U.S. 606 (1972) . . . . . . . . . . . . 11, 14, 20, 21, 22, 26

*Harrington v. Bush,* 553 F.2d 190 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . 39

*Haynes v. D.C. Water and Sewer Auth.*, 924 F.3d 519 (D.C. Cir. 2019) . . . . . . . . 2

*Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Helstoski v. Meanor*, 442 U.S. 500 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 49

*Holt v. Davidson*, 441 F. Supp. 2d 92 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . 29

*Holy Spirit Ass'n for the Unification of World Christianity v. CIA*,
636 F.2d 838 (D.C. Cir. 1980), *vacated in part on other grounds*, 455 U.S. 997 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . 19, 48

iv

*Howard v. U.S. District Court for D.C.*, No. 10-1114,
   2010 WL 2639960  (D.D.C. June 30, 2010) . . . . . . . . . . . . . . . . . . . . . . . . 33

*Hubbard v. Administrator, EPA*, 982 F.2d 531 (D.C. Cir. 1992) . . . . . . . . . . . . 29

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979). . . . . . . . . . . . . . . . . . . . . . . . 14, 21

*In re Motions of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998) . . . . . . . . 38, 39

*In re Shepard*, 800 F. Supp. 2d 37 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . 38, 39

\* *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989
   (D.C. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10, 14, 18, 19, 20, 23,
                                                              24, 25, 36, 50

*Keener v. Congress*, 467 F.2d 952 (5th Cir. 1972) (per curiam) . . . . . . . . . . . . . 28

*Kentucky v. Graham*, 473 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Kilbourn v. Thompson*, 103 U.S. 168 (1881) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kregler v. City of New York*, 608 F. Supp. 2d 465
   (S.D.N.Y. 2009), *vacated on other grounds*,
   375 F. App'x 143 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Lane v. Pena*, 518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Larson v. Domestic and Foreign Commerce Corp.*,
   337 U.S. 682 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 34

*Liberation News Service v. Eastland*, 426 F.2d 1379
   (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Maarawi v. U.S. Congress*, 24 F. App'x 43 (2d Cir. 2002) . . . . . . . . . . . . . . . . . 28

*Maynard v. Architect of the Capitol*, 544  F. Supp. 3d 64
   (D.D.C. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

\* *McCarthy v. Pelosi*, 5 F.4th 34 (D.C. Cir. 2021), *cert. denied*,
142 S. Ct. 897 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 26

*McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . 44

*McGrain v. Daugherty*, 273 U.S. 135 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*McLean v. United States*, 566 F.3d 391 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . 28

*McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . 39

*McSurely v. McClellan*, 521 F.2d 1024 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . 49

*MINPECO, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856
(D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 24, 48

*Pentagen Technologies Int'l, Ltd. v. Committee on Appropriations,
U.S. House of Representatives*, 20 F. Supp. 2d 41
(D.D.C. 1998), *aff'd on other grounds*, 194 F.3d 174
(D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Pollack v. Hogan*, 703 F.3d 117 (D.C. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . 31

*Powell v. McCormack,* 395 U.S. 486 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . 19, 20, 24

*Rivera-Gomez v. de Castro*, 900 F.2d 1 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . 49

*Rockefeller v. Bingaman*, 234 F. App'x 852 (10th Cir. 2007) . . . . . . . . . . . . . . . 28

*Schwartz v. U.S. Dep't of Justice*, 435 F. Supp. 1203
(D.D.C. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Semper v. Gomez*, 747 F.3d 229 (3d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Stone v. Dep't of Housing and Urban Development*,
859 F. Supp. 2d 59 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Trackwell v. U.S. Government*, 472 F.3d 1242 (10th Cir. 2007) . . . . . . . . . . . . . 33

*Tri-State Hosp. Supply Corp.v. United States*, 341 F.3d 571
(D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Brewster*, 408 U.S. 501 (1972) . . . . . . . . . . . . . . . . . . . . . . . 18, 49

*United States v. Choi*, 818 F. Supp. 2d 79 (D.D.C. 2011) . . . . . . . . . . . . . . . . . 33

*United States v. Hubbard*, 650 F. 2d 293 (D.C. Cir. 1980) . . . . . . . . . . . . . . 17, 44

*United States v. Rayburn House Office Building, Room 2113,
Washington, D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007) . . . . . . . . . . . . . . 24

*United We Stand America, Inc. v. IRS*, 359 F.3d 595
(D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 37

*Washington Legal Found. v. U.S. Sentencing Comm'n*,
17 F.3d 1446 (D.C. Cir. 1994) (*WLF I*) . . . . . . . . . . . . . . . . . . . . . . . . 12, 41

*Washington Legal Found. v. U.S. Sentencing Comm'n*,
89 F.3d 897 (D.C. Cir. 1996) (*WLF II*) . . . . . . 12, 13, 29, 32, 33, 36, 41, 42

*Watkins v. United States*, 354 U.S. 178 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . 48

**Constitution, Statutes, and Federal Rules**

U.S. Const. art. I, § 5, cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 38

* U.S. Const. art. I, § 5, cl. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 37

* U.S. Const. art. I, § 6, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

28 U.S.C. § 1361 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 33

28 U.S.C. § 1651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

National Defense Authorization Act for FY 2016,
    Pub. L. No. 114-92, § 1045, 129 Stat. 726 (2015) . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Congressional Material**

160 Cong. Rec. S6447 (daily ed. Dec. 9, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 6

160 Cong. Rec. S6405 (daily ed. Dec. 9, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 6

161 Cong. Rec. S4176  (daily ed. June 16, 2015) . . . . . . . . . . . . . . . . . . . . 22, 23

161 Cong. Rec. S7188  (daily ed. Oct. 7, 2015) . . . . . . . . . . . . . . . . . . . . . . . 23

*Report of the Comm. on the Judiciary of the House of
    Representatives Identifying Court Proceedings and
    Actions of Vital Interest to Congress*, No. 5, 97th Cong.
    (Comm. Print 1980) (H. Print No. 97-5) . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Report of the House Select Comm. on Congressional Operations
and the Senate Comm. on Rules and Admin. on Court
Proceedings and Actions of Vital Interest to Congress*,
Part 6, 95th Cong. (Comm. Print 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Report of the Senate Select Committee on Intelligence Committee
Study of the Central Intelligence Agency's Detention and
Interrogation Program*, S. Rep. No. 113-288 (2014) . . . . . . . . . . . 2, 5, 6, 7

S. Rep. No. 94-755, book II (1976) (Church Committee) . . . . . . . . . . . . . . . . . . . 4

Senate Rule XI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Senate Rule XI.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Senate Rule XXI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Senate Rule XXVI.4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Senate Rule XXVI.5(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Senate Rule XXVI.5(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Senate Rule XXIX.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Senate Rule XXXI.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

S. Res. 400, 94th Cong., 2d Sess. (1976) . . . . . . . . . . . . . . . . . . . . . . 4, 38, 42
        § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        § 4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 38
        § 5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        § 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        § 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        § 8(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        § 8(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

S.  Res. 474, 96th Cong. (1980),
  *reprinted in* S. Doc. No. 116-1, at 194-96 (2020) . . . . . . . . . . . . . . . . . . 38

SSCI Committee Rule 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

SSCI Press Release*, Committee Releases Study of the CIA's Detention
  and Interrogation Program (Dec. 9, 2014)*, *available at*
  https://www.intelligence.senate.gov/press/committee-releases-
  study-cias-detention-and-interrogation-program . . . . . . . . . . . . . . . . . . . . . 6


**Miscellaneous**

Letter from W. Neil Eggleston, Counsel to the President, to Sen. Dianne
  Feinstein (Dec. 9, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# GLOSSARY

CIA            Central Intelligence Agency

JA             Joint Appendix

SSCI           Senate Select Committee on Intelligence

*WLF I*        *Washington Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446
               (D.C. Cir. 1994)

*WLF II*       *Washington Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897
               (D.C. Cir. 1996)

## STATEMENT OF JURISDICTION

This Court has jurisdiction, under 28 U.S.C. § 1291, over this appeal from the district court's September 15, 2022 Order dismissing the complaint for lack of subject matter jurisdiction based on the Speech or Debate Clause and sovereign immunity.  Plaintiff-Appellant filed a timely notice of appeal on September 20, 2022.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

This appeal presents three issues for review:

1)  Whether the district court correctly held that Plaintiff-Appellant's suit to compel the Senate Select Committee on Intelligence and its Chairman to disclose to him a classified Committee Report was jurisdictionally barred by the Speech or Debate Clause of the Constitution;

2)  Whether the district court correctly held that the Committee and its Chairman had no duty under the common law right of access to public records to disclose the Committee Report to Plaintiff-Appellant, and, therefore, that the *Larson-Dugan* exception did not apply and Plaintiff-Appellant's suit was barred by sovereign immunity; and

3)  Whether the district court's denial of Plaintiff-Appellant's request for discovery and an evidentiary hearing before deciding the Defendants-Appellees' motion to dismiss was an abuse of discretion.

1

## STANDARD OF REVIEW

The district court's grant of a motion to dismiss for lack of jurisdiction on Speech or Debate Clause and sovereign immunity grounds is reviewed *de novo*. *See Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 991 (D.C. Cir. 2021). The denial of a request for discovery is reviewed for abuse of discretion. *See Haynes v. D.C. Water and Sewer Auth.*, 924 F.3d 519, 520, 523 (D.C. Cir. 2019).

## STATEMENT OF THE CASE

### A.    Introduction

Plaintiff-Appellant Shawn Musgrave ("Plaintiff") brought suit against the Senate Select Committee on Intelligence ("SSCI" or the "Committee") and its Chairman, Senator Mark Warner (collectively "Senate defendants"), to compel the Senate defendants to disclose to him the full classified report that SSCI submitted to the Senate detailing the Committee's multi-year study of CIA detention and interrogation policies. *Report of the Senate Select Committee on Intelligence Committee Study of the Central Intelligence Agency's Detention and Interrogation Program*, S. Rep. No. 113-288 (2014) [hereinafter "Report"]. Plaintiff claims that he is entitled to the Report under the common law right of access to public records. The district court dismissed Plaintiff's suit for lack of jurisdiction, holding that Plaintiff's claim against the Senate defendants was barred by the Speech or Debate Clause and sovereign immunity.

2

Plaintiff offers no grounds for reversing the district court's decision.  Under well-established precedent of both the Supreme Court and this Court, the Committee's Report constitutes activity that falls within the legislative sphere and, therefore, Senate defendants are absolutely protected from Plaintiff's suit by the Speech or Debate Clause.  In addition, Senate defendants are shielded from this suit by sovereign immunity, and Plaintiff identifies no waiver of that immunity that allows his claim to proceed.  Plaintiff's attempt to rely on the *Larson-Dugan* exception to sovereign immunity is of no avail, because he can point to no legal duty violated by Senate defendants, as the common law right of access to public records does not apply to Senate documents and, even if did apply, it imposes no duty on Senate defendants to disclose the Report.

Finally, the district court acted well within its discretion when it declined Plaintiff's request to take discovery and present evidence at a hearing before ruling on Senate defendants' motion to dismiss.  Such discovery both is unnecessary to resolving the Speech or Debate Clause and sovereign immunity legal defenses, and, moreover, would itself be precluded by the Speech or Debate Clause because Plaintiff seeks to question Senators and staff about their legislative activities concerning the Report.

Accordingly, this Court should affirm the district court's judgment that Plaintiff's suit is barred by the Speech or Debate Clause and sovereign immunity.

3

## B.    Background

### 1.    Responsibilities of the Senate Select Committee on Intelligence.

In 1976, in response to a recommendation by a Senate select committee that had conducted an in-depth study of the intelligence community (often called the "Church Committee" after its chairman), *see* S. Rep. No. 94-755 (1976), Book II, at 339 (recommendation 96), the Senate established a permanent Select Committee on Intelligence ("SSCI") "to oversee and make continuing studies of the intelligence activities and programs of the United States Government, and to submit to the Senate appropriate proposals for legislation and report to the Senate concerning such intelligence activities and programs."  S. Res. 400, 94th Cong., 2d Sess. (1976) [JA 21].  The Senate charged SSCI with the responsibility "to provide vigilant legislative oversight over the intelligence activities of the United States to assure that such activities are in conformity with the Constitution and laws of the United States."  *Id.* § 1 [JA 21].   To carry out its responsibilities, the Senate authorized SSCI "to make investigations into any matter within its jurisdiction," *id.* § 5(a) [JA 25], and to bring "to the attention of the Senate . . . any matters requiring the attention of the Senate."  *Id.* § 4(a) [JA 24].

Recognizing that SSCI would handle documents of the utmost sensitivity, including national security information classified pursuant to procedures established by Executive order, the Senate placed tight restrictions on access to and disclosure of

4

Committee information.  *See id.* §§ 6-8 [JA 26-29].  Senate Resolution 400, as amended, specifies the mechanism for SSCI to disclose information publicly, including intricate procedures for SSCI to seek to disclose classified information it has received.  *Id.* § 8 [JA 26-29].  Furthermore, the resolution restricts any disclosure of protected committee material, *id.* § 8(c) [JA 28-29], and authorizes the Senate Select Committee on Ethics "to investigate any unauthorized disclosure of intelligence information by a Member, officer or employee of the Senate" who may have violated that prohibition.  *Id.* § 8(d) [JA 29].

2    SSCI's Study of the Central Intelligence Agency's Detention and Interrogation Program.

On December 11, 2007, SSCI received a briefing from CIA Director Michael Hayden regarding the destruction of videotapes of CIA interrogations of certain detainees.  *See* Report, S. Rep. No. 113-288, at 8.[1]  After that briefing, SSCI began a review of the destruction of videotapes related to CIA interrogations.  *Id.*  From that review, SSCI determined that a broader study of the CIA's detention and interrogation program was needed, and, on March 5, 2009, the Committee, by a vote of 14-1, approved Terms of Reference detailing the scope and mechanism for conducting a study of the CIA program.  *Id.*  The

---

[1]  As explained *infra*, the Executive Summary and Findings and Conclusions of the SSCI study were declassified (with redactions) and made publicly available.  Citations to the Report are to that publicly-released, declassified 500-page summary.

Committee's multi-year study resulted in a report exceeding 6,700 pages with approximately 38,000 footnotes.  *Id.*  On December 13, 2012, SSCI voted 9-6 to approve the Report of the Committee's study.  *Id.*

SSCI then requested that particular Executive agencies review and provide comment on the Report.  *Id.* at 9.  SSCI received a written response from the CIA and held a series of meetings with the agency.  *Id.*  The Committee also received Minority views from some of its Members.  *Id.*  In response, the Committee revised its findings and conclusions and updated the Report.  *Id.*  On April 3, 2014, by an 11-3 vote, the Committee sent the Report's Executive Summary and Findings and Conclusions (over 500 pages) to the President for declassification and public release.  *Id.*  On December 9, 2014, the Committee submitted the full 6,700-page Report to the Senate for review by Senators in a secure setting, and publicly released the declassified Executive Summary and findings and conclusions.  *See* 160 Cong. Rec. S6447 (daily ed. Dec. 9, 2014) (report submitted by SSCI); *id.* at S6405 (statement of Sen. Feinstein); SSCI Press Release, Committee Releases Study of the CIA's Detention and Interrogation Program (Dec. 9, 2014), *available at* https://www.intelligence.senate.gov/press/committee-releases-study-cias-detention-and-interrogation-program.  At the same time, the Committee provided a copy of the full classified Report to the President and certain Executive agencies.  *See* Letter of Dec. 9, 2014 from Sen. Dianne Feinstein

6

to Senate President Pro Tempore Patrick Leahy, *reprinted in* S. Rep. No. 113-288, at i; Compl. ¶ 25 [JA 14].

At the beginning of the 114th Congress, in January 2015, Senator Richard Burr succeeded Senator Feinstein as Chairman of SSCI. On January 14, 2015, Senator Burr sent a letter to the President requesting that "all copies of the full and final report in the possession of the Executive Branch be returned immediately to the Committee." *ACLU v. CIA*, 823 F.3d 655, 661 (D.C. Cir. 2016) (quoting Letter from Sen. Richard Burr to President Barack Obama (Jan. 14, 2015)); *see also* Compl. ¶ 27 [JA 14-15]. Senator Burr again requested return of copies of the Report from the Executive Branch in May 2017. *See Cox v. Dep't of Justice*, 504 F. Supp. 3d 119, 130 (E.D.N.Y. 2020) (describing letter). While copies from various agencies were returned to SSCI, the copy provided to President Obama was maintained as part of his presidential records subject to the Presidential Records Act. *See* Letter from W. Neil Eggleston, Counsel to the President, to Sen. Dianne Feinstein (Dec. 9, 2016), *available at* http://go.usa.gov/x86nB. In addition, Judge Lamberth ordered the preservation of a copy of the Report by the Department of Defense and the deposit of a copy with the district court in connection with pending Guantanamo Bay litigation. *See* Order, ECF No. 268, *Al-Nashiri v. Bush*, No. 08-cv-1207 (D.D.C. Dec. 28, 2016). The full Report has not been released to the public and remains classified. *See* Report, S. Rep. No. 113-288, at iv.

3.     FOIA Litigation in This Circuit Over the SSCI Report.

In 2016, the D.C. Circuit upheld the withholding of the Report by the CIA and other agencies in response to a FOIA request, *ACLU v. CIA*, 823 F.3d 655 (D.C. Cir. 2016), ruling that, under established Circuit precedent[2], the Report was a congressional, not an agency, record and therefore not subject to FOIA. *See id.* at 661-68. The Court found that "the Senate [Intelligence] Committee's intent to retain control of the Full Report is clear," and "[t]he Full Report therefore remains a congressional document that is not subject to disclosure under FOIA." *Id.* at 667-68. As the Court noted, SSCI correspondence with the Executive branch in conjunction with the SSCI study "made it clear that the Committee would determine if and when to publicly disseminate the Full Report." *Id.* at 667.[3]

---

[2] *Goland v. CIA*, 607 F.2d 339, 344-48 (D.C. Cir. 1978), *vacated in part on other grounds*, 607 F.2d at 367 (D.C. Cir. 1979) (per curiam); *Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838, 839-42 (D.C. Cir. 1980), *vacated in part on other grounds*, 455 U.S. 997 (1982); *Paisley v. CIA*, 712 F.2d 686, 692-94 (D.C. Cir. 1983), *vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984) (per curiam)); *United We Stand America v. IRS*, 359 F.3d 595, 599-601 (D.C. Cir. 2004).

[3] In a separate FOIA lawsuit in the Eastern District of New York seeking disclosure of the SSCI Report from the Executive Branch, *Cox v. Dep't of Justice, et al.*, No. 17-cv-3329 (E.D.N.Y.), the district court granted defendants' motion for summary judgment, finding, as had the D.C. Circuit, that the Report constituted a congressional record not subject to FOIA. Memorandum and Order, ECF No. 61, 17-cv-3329 (E.D.N.Y. Mar. 30, 2022), *appeal docketed*, No. 22-1202 (2d Cir.).

4.    Plaintiff's Request for the SSCI Report and Filing
of This Lawsuit.

Plaintiff sent a letter on June 4, 2021, to the General Counsel of SSCI

requesting a copy of the unreleased full Report, Compl. ¶ 26 [JA 14], but was not

provided a copy.  *Id.* ¶ 37 [JA 18].  Plaintiff then filed this lawsuit on August 18,

2021, against SSCI and its current Chairman seeking disclosure of the Report.

## C.    Plaintiff's Allegations

Plaintiff's complaint asserts a single claim under the common law right of

access to public records.  *Id.* ¶ 38 [JA 18].  The complaint alleges that the SSCI

Report "is a 'public record' . . . that does not implicate the Speech or Debate

Clause rights of any individual Member of Congress or Committee to a

meaningful extent, and SSCI's interest in keeping it secret is outweighed by the

uniquely significant public interest in disclosure of the full Report."  *Id.*  In

support of Plaintiff's claim, the complaint relies heavily on the concurring opinion

in a recent D.C. Circuit decision, *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989 (D.C.

Cir. 2021).  Compl. ¶¶ 9-13 [JA 8-10].  Plaintiff's complaint alleges that the

Report should be disclosed because "[t]he damage of the Report's continued

secrecy is already being done as more and more high-level officials are not only

not required to read the Report but could not read it even if they wanted to."

Compl. ¶ 33 [JA 17].  For relief, Plaintiff asks the Court to order Senate

defendants to produce the Report to him, "declare that the common law right of

9

access applies to committees of the U.S. Senate," and "direct the [non-party]
Secretary of the Senate to develop a standardized process for the handling of such
requests." *Id.*, Prayer for Relief [JA 18].

### D.    Proceedings Below

Plaintiff filed this suit on August 18, 2021.  On  October 22, 2021, Senate
defendants moved to dismiss for lack of jurisdiction, Fed R. Civ. P. 12(b)(1), and
failure to state a claim, Fed. R. Civ. P. 12(b)(6).  Defendants' Motion to Dismiss,
ECF No. 5, 1:21-cv-02198.   Plaintiff filed an opposition to that motion.  On
September 15, 2022, the district court issued a Memorandum Opinion [JA 167]
and Order [JA 166] granting the motion and dismissing the complaint for lack of
subject matter jurisdiction.

### E.    The District Court's Decision

In its September 15, 2022 Opinion, the district court held that it lacked
jurisdiction over Plaintiff's complaint for two independent reasons: (1) the
complaint was barred by the Speech or Debate Clause, and (2) sovereign immunity
shielded Senate defendants from this suit.

As to the Speech or Debate Clause, the district court, applying Supreme
Court and D.C. Circuit precedent, explained that, "although [the Clause] speaks of
'Speech or Debate,' it extends to protect all 'legislative acts,'" Opinion at 7
(citing *Judicial Watch*, 998 F.3d at 991, and quoting *Doe v. McMillan*, 412 U.S.

10

306, 312 (1973)), and "is an absolute bar to interference" when Members of Congress are acting "within the legitimate legislative sphere." *Id.* (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975)).

Further, the court explained, Supreme Court precedent recognizes that Congress's investigative "function is an 'integral part of the legislative process,'" *id.* (quoting *Eastland*, 421 U.S. at 505), and, therefore, acts that are part of congressional investigations "qualif[y] for protection" under the Clause. *Id.* Applying this precedent, the court found that "[t]he Report, a product of a comprehensive Senate investigation, 'is related to and in furtherance of a legitimate task of Congress' – to propose legislation based on accurate, well-researched, and complete information in an area of public interest[,]" *id.* at 8, and was "thus an act of Congress 'done in a session . . . in relation to the business before it,'" and fully protected by the Speech or Debate Clause. *Id.* (quoting *Gravel v. United States*, 408 U.S. 606, 624 (1972)). Accordingly, the Clause "completely bars plaintiff's suit." *Id.*

As to sovereign immunity, the district court found that Congress and its Members are protected by sovereign immunity, but that immunity is subject to the *Larson-Dugan* exception that permits suits against federal officials "seeking specific relief for (1) action by [government] officers beyond their statutory powers [or] (2) even though within the scope of their authority, the powers

11

themselves or the manner in which they are exercised are constitutionally void." *Id.* at 12 (quoting *Dugan v. Rank*, 372 U.S. 609, 621–22 (1963)).  The court found that, "as was the case in *Judicial Watch [v. Schiff]*, no allegation is made – and no evidence suggests – that SSCI or its chairman acted ultra vires or in a manner contrary to the Constitution or a statute in commissioning the Report, investigating the CIA's program, or disseminating the Report to select entities."  Opinion at 14. However, citing the D.C. Circuit's decision in *Washington Legal Found. v. U.S. Sentencing Comm'n ("WLF II")*, 89 F.3d 897 (D.C. Cir. 1996), the court concluded that a duty "owed by the defendants . . . from the common-law right itself, not a separate statute or regulation," was sufficient to invoke the *Larson-Dugan* exception.  Opinion at 14 (citing *WLF II*, 89 F.3d at 901).  Because the *Larson-Dugan* exception thus depended on whether there is a common law duty to disclose the Report, the court found that the sovereign immunity question merged with the merits of Plaintiff's common-law-right-of-access-to-public-records claim. *Id.* at 15.

Turning to that question, the court followed this Circuit's two-step test for common-law-right-of-access claims:  "[f]irst, a court must decide 'whether the document sought is a "public record,"' and, if it is, then, second, 'the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure.'"  Opinion at 17 (quoting *Washington*

12

*Legal Found. v. U.S. Sentencing Comm'n ("WLF I")*, 17 F.3d 1446, 1451-52 (D.C. Cir. 1994)).  The court held the Report failed to satisfy either prong.  First, the court found that the Report constituted a "preliminary and advisory step to gather information pertinent to the Committee's task of 'oversee[ing] and mak[ing] continuing studies of the intelligence activities and programs of the United States Government' in an effort to submit 'appropriate proposals for legislation' to the Senate."  Opinion at 18 (quoting Defendants' Memo. in Support of Defs.' Mot. to Dismiss at 3).  Thus, the Report "was preliminary to any final recommendation or proposed legislation such that this action lacks the legal significance to constitute a 'public record' to which the right of public access attaches."  Opinion at 18 (citing *WLF II*, 89 F.3d at 906).

The court further concluded that Plaintiff's claim failed the second step, because "the Report contains highly classified information about the CIA's detention and interrogation policies and procedures that would compromise national security if released, far outweighing the public's interest in disclosure." Opinion at 20.

Hence, as Plaintiff's complaint did not establish any duty under the common law right requiring defendants to disclose the SSCI Report, the court held that the *Larson-Dugan* exception does not apply, and sovereign immunity bars Plaintiff's suit.

13

## SUMMARY OF ARGUMENT

I.    The district court correctly held that the Speech or Debate Clause bars Plaintiff's suit to compel SSCI and its Chairman to release the SSCI Report.  That Clause provides the Senate, its Members, and committees with an absolute immunity from suit and from compelled production of documents for all actions in the legislative sphere.  *See Judicial Watch*, 998 F.3d at 992; *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420 (D.C. Cir. 1995).  The legislative sphere includes "anything generally done in a session of the House by one of its members in relation to the business before it."  *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (internal quotation marks omitted).  Committee investigations are legislative acts in furtherance of Congress's legislative and oversight functions, *see Eastland*, 421 U.S. at 504, and reports of committee investigations fall squarely within the ambit of the Clause, as the Supreme Court has specifically stated.  *See Hutchinson v. Proxmire*, 443 U.S. 111, 124-25 (1979); *Doe v. McMillan*, 412 U.S. at 313; *Gravel*, 408 U.S. at 624.

Plaintiff's argument that the Clause's protection should be balanced against the public's interest in disclosure flies in the face of well established precedent recognizing that the immunity of the Clause is absolute.  In addition, Plaintiff's suggestion that the Clause only protects "deliberative" matters misconceives the Clause's immunity, which is not merely a protection of congressional

14

deliberations, but safeguards all legislative acts from interference to ensure the independent performance of Congress's legislative responsibilities.  The SSCI Report was part of the legislative process by which the Committee informed the Senate concerning CIA detention and interrogation policies; as such, it constitutes an activity that falls squarely within the legislative sphere protected by the Clause.

II.     The district court also correctly held that sovereign immunity bars this suit. SSCI and Senator Warner, sued in his official capacity, are covered by sovereign immunity, and, therefore, Plaintiff bears the burden to demonstrate a waiver of sovereign immunity to pursue his common-law-right-of-access claim.  No such statutory waiver exists, and the *Larson-Dugan* exception to sovereign immunity is inapplicable because Plaintiff does not allege that Senate defendants violated either a statutory limitation or the Constitution – the only two circumstances in which that exception applies.

Even if the *Larson-Dugan* exception could permit a common-law-right-of-access-to-public-records claim to proceed against congressional defendants, Plaintiff's claim here would not qualify for that exception because Senate defendants had no duty to disclose the Report under that doctrine for two reasons. First, the common law right does not apply to documents of a House of Congress. Senate defendants recognize that this Circuit has stated that the common law right of access applies to all three branches of government, but the Court of Appeals has

never applied that right to records of a House of Congress. Applying that common law right to documents of a House of Congress would conflict with the Constitution's Journal and Rulemaking Clauses, art. I, § 5, cl. 2 & 3, which provide the Senate with the authority to determine which records it will make public and which will be kept confidential. *See Goland v. CIA*, 607 F.2d 339, 346 (D.C. Cir. 1978) ("Congress has undoubted authority to keep its records secret, authority rooted in the Constitution, longstanding practice, and current congressional rules."), *vacated in part on other grounds*, 607 F.2d at 367 (D.C. Cir. 1979) (per curiam). Imposing a common law right to compel access to confidential Senate records would thus infringe upon the authority granted to each House by those constitutional provisions and directly undermine Congress's autonomy in contravention of the separation of powers.

Second, even if it applied to the Senate, the common law right of access would not require disclosure of the Report at issue. As the court below held, the Report does not qualify as a "public record" under that doctrine because the Report was submitted to the Senate to inform the Senate regarding the CIA's detention and interrogation policies to aid in Senate consideration of legislation regarding such matters. As such, the Report "was preliminary to any final recommendation or proposed legislation," and thereby "lack[ing] the legal significance to constitute a 'public record[.]'" Opinion at 19. In addition, the

16

interests in keeping the classified SSCI Report secret outweigh any interest in public disclosure, as "the need to 'guard against risks to national security interests' overcomes a common-law claim for access." *Dhiab v. Trump*, 852 F.3d 1087, 1098 (D.C. Cir. 2017) (quoting *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980)).  Accordingly, as Senate defendants have no common law duty to disclose the Report, the *Larson-Dugan* exception does not apply and sovereign immunity precludes Plaintiff's suit.[4]

**III.**    The district court did not abuse its discretion in declining Plaintiff's request for discovery and an evidentiary hearing before deciding the motion to dismiss. Neither discovery nor an evidentiary hearing is necessary to resolve defendants' jurisdictional defenses, as both present matters of law appropriately resolved based on the allegations in the complaint.  Furthermore, the evidence Plaintiff sought to adduce regarding the purpose behind SSCI's committee report is not relevant to either the Speech or Debate Clause or sovereign immunity defenses.  Moreover, the discovery Plaintiff requested – to compel production of documents, take deposition testimony, and to "question an SSCI official under oath in the District Court's presence," Brief for Plaintiff-Appellant ("Appellant's Br.") at 24 – is itself

---

[4]  While the district court held that the complaint lacked jurisdiction on both Speech or Debate Clause and sovereign immunity grounds, upholding the district court's finding on either of these defenses, of course, is sufficient to affirm the judgment.

barred by the Speech or Debate Clause, as questioning Senators and staff about their activities concerning the Report directly intrudes into the legislative sphere protected by the Clause.

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY HELD THAT THE SPEECH OR DEBATE CLAUSE BARS PLAINTIFF'S SUIT TO COMPEL SSCI AND ITS CHAIRMAN TO PRODUCE THE REPORT.

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. Its purpose "is to insure that the legislative function the Constitution allocates to Congress may be performed independently," *Eastland*, 421 U.S. at 502, "without regard to the distractions of private civil litigation or the perils of criminal prosecution." *Brown & Williamson*, 62 F.3d at 415; *see also Judicial Watch*, 998 F.3d at 991 ("[Clause's] purpose is . . . 'to preserve the independence and thereby the integrity of the legislative process.'" (quoting *United States v. Brewster*, 408 U.S. 501, 524 (1972)); *McCarthy v. Pelosi*, 5 F.4th 34, 38 (D.C. Cir. 2021) ("The central object of the Speech or Debate Clause is to protect the independence and integrity of the legislature.") (internal quotation marks and citation omitted), *cert. denied*, 142 S. Ct. 897 (2022). As the district court noted, by "safeguard[ing] legislative independence, the Clause also 'serves the additional function of reinforcing the separation of

powers so deliberately established by the Founders.'"  Opinion at 6-7 (quoting *Eastland*, 421 U.S. at, 502); *see also Judicial Watch*, 998 F.3d at 991.

To protect the independence of Congress's legislative function, the Speech or Debate Clause provides Members of Congress with an "absolute immunity from civil suit," *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) (citing *Eastland*, 421 U.S. at 502-03), and with "a testimonial and non-disclosure privilege" that protects Members "from being compelled to answer questions about legislative activity or produce legislative materials." *Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013); *see also Judicial Watch*, 998 F.3d at 992; *Brown & Williamson*, 62 F.3d at 420; *MINPECO, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988).  As this Circuit has stated, for legislative matters under the Speech or Debate Clause, "[a] party is no more entitled to compel congressional testimony – or production of documents – than it is to sue congressmen." *Brown & Williamson*, 62 F.3d at 421.

In applying the Speech or Debate Clause, the Supreme Court has counseled that, because "the guarantees of the Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979). And so, "[w]ithout exception," the Supreme Court has "read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501; *Judicial*

19

*Watch*, 998 F.3d at 991 (same); *Rangel*, 785 F.3d at 23 (same). As the Supreme

Court and this Circuit have held, "although [the Clause] speaks of 'Speech or

Debate,'it extends to protect all 'legislative acts.'" *Judicial Watch*, 998 F.3d at

991 (quoting *Doe v. McMillan*, 412 U.S. at 312); *McCarthy*, 5 F.4th at 39 ("Clause

applies not just to speech and debate in the literal sense, but to all 'legislative

acts.'"). That is, the Clause provides immunity for all actions "within the sphere

of legitimate legislative activity," *Eastland*, 421 U.S. at 501, which encompasses

"anything 'generally done in a session of the House by one of its members in

relation to the business before it.'" *Doe v. McMillan*, 412 U.S. at 311 (quoting

*Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)). This includes:

> the deliberative and communicative processes by which Members
> participate in committee and House proceedings with respect to the
> consideration and passage or rejection of proposed legislation or with
> respect to other matters which the Constitution places within the
> jurisdiction of either House[.]

*Gravel v. United States*, 408 U.S. 606, 625 (1972); *McCarthy*, 5 F.4th at 39. And,

as the Supreme Court has explained, where it applies, the Clause's protections are

absolute. *See Eastland*, 421 U.S. at 503; *Consumers Union of United States, Inc.*

*v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1350 (D.C. Cir. 1975)

(Supreme Court "has emphasized the absoluteness of [the Clause's] bar when the

sphere of legislative activity is involved as well as the necessity of a broad reading

to effectuate its purposes.").

20

The district court correctly applied this precedent to find that the Clause bars Plaintiff's suit against the Senate defendants to compel production of the Report. As the court below recognized, the Supreme Court has found that the investigative power of Congress is part of the legislative function. *See Eastland*, 421 U.S. at 504 ("[T]he power to investigate is inherent in the power to make laws because 'a legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'") (citing *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)), *quoted in* Opinion at 8. Because the Report is "the product of a comprehensive Senate investigation," it is "related to and in furtherance of a legitimate task of Congress," Opinion at 8, and, thus, is "an 'integral part' of . . . a 'matter[] which the Constitution places within the jurisdiction of either House.'" *Id.* at 10 (quoting *Gravel*, 408 U.S. at 625). Accordingly, the Report is within the legislative sphere, and the Speech or Debate Clause absolutely precludes this suit seeking to compel Senate defendants to disclose the Report. *See id.* at 9 (citing *Gravel*, 408 U.S. at 624).

This conclusion accords with established Supreme Court precedent consistently finding committee reports protected by the Speech or Debate Clause. *See Hutchinson v. Proxmire*, 443 U.S. 111, 124-25 (1979) ("[W]e have held that committee hearings are protected, even if held outside the Chambers; *committee reports are also protected*.") (emphasis added); *Doe v. McMillan*, 412 U.S. at 313

("The acts of authorizing an investigation . . . , preparing a [committee] report . . . , and authorizing the publication and distribution of that report were all . . . protected by the Speech or Debate Clause[,]" and courts "have no authority to oversee the judgment of the Committee" regarding such matters); *Gravel*, 408 U.S. at 624 (stating that "voting by Members and *committee reports* are protected" by Speech or Debate Clause) (emphasis added).

Committee reports are categorically within the legislative sphere as a fundamental part of "the deliberative and communicative processes by which" Congress considers legislation. *Gravel,* 408 U.S. at 625.  The Report here was filed with the Senate to inform and aid the Senate's legislative deliberations.  And, while no specific legislation need be identified to demonstrate the legislative character of a Senate committee report[5], within a year of the Committee's submission to the Senate of its final Report, the Senate enacted legislation containing limitations on interrogation techniques used upon detainees.  *See* National Defense Authorization Act for FY 2016, Pub. L. No. 114-92, § 1045, 129 Stat. 726, 977-79 (2015); *see also* 161 Cong. Rec. S4176 (daily ed. June 16, 2015)

---

[5]  *Cf. Barenblatt v. United States*, 360 U.S. 109, 111 (1959) ("The power of inquiry has been employed by Congress throughout our history, over the whole range of the national interests concerning which Congress might legislate or *decide upon due investigation not to legislate* . . . .") (emphasis added); *Eastland*, 421 U.S. at 509 ("Nor is the legitimacy of a congressional inquiry to be defined by what it produces . . . .  To be a valid legislative inquiry there need be no predictable end result.").

(statement of Sen. Leahy) (referencing SSCI Report in urging Senators to support amendment limiting interrogation techniques on detainees); 161 Cong. Rec. S7188 (daily ed. Oct. 7, 2015) (statement of Sen. Feinstein).

Furthermore, this Court's recent decision in *Judicial Watch* squarely applies here and supports the district court's holding.  In *Judicial Watch*, this Court found that the Speech or Debate Clause barred a common-law-right-of-access lawsuit against the House Permanent Select Committee on Intelligence and its chairman seeking disclosure of committee-issued subpoenas and the responses thereto.  This Court held that "the Committee's issuance of subpoenas, whether as part of an oversight investigation or impeachment inquiry, was a legislative act protected by the Speech or Debate Clause."  998 F.3d at 992.  As the district court recognized, "[t]hat same reasoning and result applies here," Opinion at 9, and, just as with the committee subpoenas in *Judicial Watch*, a committee report of an oversight investigation is a legislative matter protected by the Clause.

On appeal, Plaintiff challenges the district court's conclusion, arguing that the court below erred by failing to address the "main question" posed by the concurring opinion in *Judicial Watch*.  Appellant's Br. at 13.  Specifically, Plaintiff points to that concurrence's statement that the Speech or Debate Clause "should not bar disclosure of public records subject to the common law right of access in all circumstances . . . [but i]nstead, the Clause should be considered in

23

weighing the interests for and against disclosure as part of the [common law right of access's] balancing test."  *Id.* at 12 (quoting *Judicial Watch*, 998 F.3d at 999 (Henderson, J., concurring)).  But the concurrence's suggestion that Speech or Debate Clause immunity should merely be one consideration in balancing the interests in secrecy versus public disclosure was not adopted by the majority opinion, which simply held that the Clause barred the common-law-right-of-access suit seeking disclosure of a House committee subpoena  *See Judicial Watch*, 998 F.3d at 991-93.  And, of course, it is the majority opinion in *Judicial Watch*, not the concurrence, that is binding.  *See* Opinion at 9 ("The Court is bound by the law of the D.C. Circuit's majority opinion in *Judicial Watch*. . . .").

Moreover, the concurrence's suggestion that the Clause's immunity should be balanced against common law disclosure interests directly conflicts with long-standing Supreme Court and Circuit precedent that clearly states that, where the Clause applies, "the prohibitions of the Speech or Debate Clause are *absolute*." *Eastland*, 421 U.S. at 501 (emphasis added); *see also Rangel*, 785 F.3d at 23 (Clause provides "*absolute* immunity") (emphasis added); *United States v. Rayburn House Office Bldg., Rm. 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir. 2007) ("The bar on compelled disclosure is *absolute*") (emphasis added); *Brown & Williamson*, 62 F.3d at 416 ("legislative privilege is '*absolute*' where it applies'") (emphasis added); *MINPECO, S.A.*, 844 F.2d at 862 (same).  Faithful

24

adherence to this precedent precludes any balancing of the Clause's protections against the public interest in disclosure under the common law.

In an attempt to evade the absolute nature of the Clause, Plaintiff argues that "Committee reports are not all inherently covered by the Speech or Debate Clause in the first place." Appellant's Br. at 13. Conceding that "the Supreme Court has found Committee reports to be within the protection of the Speech or Debate Clause[,]" *id.*, Plaintiff asserts that those cases "only discussed Committee reports as the medium in which an objectionable statement was recorded," and, therefore, "did not stand for the principle for which SSCI cites them in this case, to say that a house of Congress cannot be compelled to release a Committee report if it would be considered a public record according to the common law right of access." *Id.* at 14.

Yet, the very distinction Plaintiff attempts to make – between protection from liability for statements in reports as opposed to protection from their compelled disclosure – has been rejected by this Court in *Brown & Williamson*, 62 F.3d at 421, and again in *Judicial Watch*. *See* 998 F.3d at 992 ("That [plaintiff's] lawsuit seeks only the disclosure of public records, rather than to establish criminal or civil liability, does not render the Speech or Debate Clause inapplicable. To the contrary, [plaintiff] 'is no more entitled to compel . . . production of documents . . . than it is to sue congressmen.'") (internal quotation marks and citation in first sentence omitted; second sentence quoting *Brown & Williamson*, 62 F.3d at 421).

Undaunted, Plaintiff next asserts that "[w]hether or not a particular Committee report is protected from compelled disclosure by the Speech or Debate Clause . . . is a fact-dependent inquiry," which turns on whether (a) the report was "essential to Congressional deliberations," and (b) "revealing the information [in the report] would threaten Congressional integrity or independence by impermissibly exposing its deliberations to Executive influence."  Appellant's Br. at 15.  Plaintiff calls his self-created test the "*Gravel* filter," and asserts that the Report fails his test because it "was not deliberative" and, therefore, is not covered by the Speech or Debate Clause.  *Id.* at 15-16.

Plaintiff's "*Gravel* filter," which the district court correctly terms "a fiction," Opinion at 9 n.4, and which would render the Constitution's Speech or Debate Clause nothing more than a legislative form of the common-law deliberative process privilege, is based on a fundamental misunderstanding of the purpose and application of the Clause.  "The purpose of the Clause," as the Supreme Court explained, "is to insure that the legislative function the Constitution allocates to Congress may be performed independently."  *Eastland*, 421 U.S. at 502; *accord McCarthy*, 5 F.4th at 38.  That is why the Supreme Court's and this Court's application of the Clause, in *Gravel* and later cases, turns not on whether some individual Congressional act is itself judged "deliberative," but on whether it is within the legislative sphere.

26

Hence, Plaintiff's assertion that the former Chairman of SSCI intended the report to be "final" – not "deliberative" – by distributing it to the Executive Branch, is simply beside the point.  *See* Appellant's Br. at 16-18.  As the district court explained, dissemination to the Executive branch – or even, as with floor proceedings and votes, public disclosure – of a legislative act does not remove the Clause's protection, nor does any hope of the Chairman regarding how a committee report would be used by agencies outside the Senate.  *See* Opinion at 10 n.5 ("Intent to release those deliberative and communicative acts of the legislature to outside agencies or the public has no bearing on whether the Speech or Debate Clause bars suit.").  The only question for Speech or Debate Clause purposes is whether a committee report and the decision whether to release it constitute legislative acts – and, based on clear precedent, they do.[6]

Accordingly, Plaintiff's suit to compel disclosure of the Report is barred by the Speech or Debate Clause.

---

[6] Plaintiff also argues that the fact that Judge Lamberth ordered a copy of the Report to be deposited with the district court for use in pending Guantanamo Bay litigation demonstrates that the Report is not privileged under the Clause, as Judge Lamberth "would not have been able to do [so] if the Speech or Debate Clause prevented Congress from being forced to release a Committee report to an entity to which it had not consented to release it[.]" Appellant's Br. at 14.  Judge Lamberth's order directed the Executive Branch officials named as defendants in that case to deposit a copy of the Report they possessed with the district court. *See* Order, ECF No. 268, *Al-Nashiri, et al. v. Bush, et al.*, No. 08-cv-1207 (D.D.C. Dec. 28, 2016).  It did not compel any disclosure from the Senate, and thus, did not implicate the Clause.

27

## II.    THE DISTRICT COURT CORRECTLY HELD THAT SOVEREIGN IMMUNITY PRECLUDES THIS SUIT.

"[A]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  This immunity protects government entities and officials sued in their official capacities, because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Both SSCI and Senator Warner, as Chairman of SSCI sued in his official capacity, are covered by sovereign immunity.  *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (unpublished) (affirming dismissal of suit against Senator and Representative in their official capacities on sovereign immunity grounds); *see also McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) (holding that "sovereign immunity extends to the United States Congress when it is sued as a branch of the government"); *Maarawi v. U.S. Congress*, 24 F. App'x 43, 44 (2d Cir. 2001) (holding Congress protected by sovereign immunity from suit claiming Members made derogatory remarks); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (Congress "is protected from suit by sovereign immunity"); *see also* Opinion at 11.

As "[s]overeign immunity is jurisdictional in nature," *Meyer*, 510 U.S. at 475, Plaintiff bears the burden to establish affirmatively a waiver that would allow him to bring his claim against the Senate defendants.  *See Tri–State Hosp. Supply*

28

*Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003). Plaintiff's complaint fails to do so, as none of the statutes it cites – 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1361 (the Mandamus Statute), 28 U.S.C. § 2201 (the Declaratory Judgment Act), and 28 U.S.C. § 1651 (the All Writs Act), *see* Compl. at 1 [JA 7] – provide the necessary waiver.[7] Nor does the common law claim Plaintiff asserts itself waive sovereign immunity, as case law makes clear that a waiver must be expressly stated by Congress in statutory text. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be *unequivocally expressed in statutory text*, . . . and will not be implied, [and] . . . will be strictly construed, in terms of its scope, in favor of the sovereign.") (emphasis added); *Dep't of the Army v. Federal Labor Rel. Auth.*, 56 F.3d 273, 275 (D.C. Cir. 1995) ("[O]fficers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of *some express provision of Congress.*") (emphasis added); *Hubbard v. Administrator, EPA*, 982 F.2d 531, 532 (D.C. Cir.

---

[7] *See WLF II*, 89 F.3d at 901 (stating that it is "well settled" that the Mandamus Statute, 28 U.S.C. § 1361, "does not by itself waive sovereign immunity"); *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) ("Neither the general federal question statute nor the mandamus statute by itself waives sovereign immunity."); *Stone v. Dep't of Housing and Urban Development*, 859 F. Supp. 2d 59, 64 (D.D.C. 2012) (Declaratory Judgment Act); *Holt v. Davidson*, 441 F. Supp. 2d 92, 96 (D.D.C. 2006) (All Writs Act "does not operate as a waiver of sovereign immunity"); *Buaiz v. United States*, 471 F. Supp. 2d 129, 138 (D.D.C. 2007).

1992) ("We may not find a waiver unless *Congress'* intent is 'unequivocally expressed' in the relevant *statute*.") (emphasis added).

Although the court below correctly held that Plaintiff's common-law-right-of-access suit against the Senate defendants is barred by sovereign immunity, the court did so only after concluding that Plaintiff's claim could proceed under the *Larson-Dugan* exception to sovereign immunity if the Senate defendants violated a duty to disclose a public record under the common law right of access. While the court correctly found that no such duty exists here (and so no exception to sovereign immunity applies), Senate defendants assert that the court erred in not finding, as argued in Senate defendants' motion to dismiss, that the *Larson-Dugan* exception has no application here at all, because Plaintiff alleges no violation by Senate defendants of either statutory authority or a constitutional limitation. Accordingly, this Court should affirm the lower court's dismissal on sovereign immunity grounds because *Larson-Dugan* has no application to this common law suit, or, alternatively, because the claim itself lacks merit and thus establishes no duty on Senate defendants that triggers the *Larson-Dugan* exception.

### A.    The *Larson-Dugan* Exception Does Not Apply To Common-Law-Right-of-Access Suits Against Senate Defendants.

In *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949), the Supreme Court found that there may be "suits for specific relief against officers of the sovereign which are not suits against the sovereign," and thus not

barred by the sovereign's immunity, in two limited circumstances:

> [First,] where the officer's powers are limited by statute, his actions
> beyond those limitations are considered individual and not sovereign
> actions . . . and therefore may be made the object of specific relief. . . .
>
> [Second, where] the statute or order conferring power upon the
> officer to take action in the sovereign's name is claimed to be
> unconstitutional. . . . Here, too, the conduct against which specific
> relief is sought is beyond the officer's powers and is, therefore, not
> the conduct of the sovereign.

*Id.* at 689-90.  The subsequent case of *Dugan v. Rank*, 372 U.S. 609 (1963),

affirmed that the *Larson* exception to sovereign immunity applies in cases

challenging "(1) action by officers beyond their statutory powers" or claiming that

"(2) even though within the scope of their authority, the powers themselves or the

manner in which they are exercised are constitutionally void."  *Id.* at 621-22.

Accordingly, as this Circuit has stated, "the [*Larson-Dugan*] exception" applies to

"suits for specific relief against officers of the sovereign allegedly acting beyond

statutory authority or unconstitutionally."  *Pollack v. Hogan*, 703 F.3d 117, 120

(D.C. Cir. 2012) (internal quotation marks omitted).

The district court correctly found that neither condition obtained here: "no

allegation is made – and no evidence suggests – that SSCI or its chairman acted

ultra vires or in a manner contrary to the Constitution or a statute in

commissioning the Report, investigating the CIA's program, or disseminating the

Report to select entities."  Opinion at 14.  However, the court interpreted this

Court's decision in *WLF II* as having applied the *Larson-Dugan* exception in a

common-law-right-of-access suit based only on the duty "stemm[ing] from the

common-law right itself, not a separate statute or regulation." *Id.* (citing *WLF II*,

Id. at 901). The court below noted that applying the *Larson-Dugan* exception to

such claims "significantly broadens this exception to sovereign immunity beyond

the parameters articulated by the Supreme Court and, at first blush, is not easily

reconciled with Supreme Court jurisprudence that waivers of sovereign immunity

must be expressly set out by statute." Opinion at 15 n.8. Nevertheless, the court

considered itself "bound by D.C. Circuit authority" under *WLF II*, *id.*, and,

therefore, held that *Larson-Dugan* could apply if there existed a duty to disclose

under the common law. *Id.* at 15-16.

Yet, *WLF II* did not apply the *Larson-Dugan* exception based solely on the

theory of a duty under the common law right of access, but, rather, it relied on a

statutory ground, explaining that, "[i]f a plaintiff seeks a writ of mandamus to

force a public official to perform a duty imposed upon him in his official capacity,

. . . no separate waiver of sovereign immunity is needed[,]" 89 F.3d at 901 (citing

*Chamber of Commerce v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996)), as a duty

under the Mandamus Statute qualifies for the *Larson-Dugan* exception to

sovereign immunity.[8]  The Mandamus Statute, 28 U.S.C. § 1361, however, does not apply to Members of Congress or congressional committees.  *See United States v. Choi*, 818 F. Supp. 2d 79, 84 (D.D.C. 2011) ("§ 1361 is only a source of jurisdiction for district courts to exercise writs of mandamus to employees of the *Executive* branch.") (citing cases); *Howard v. U.S. District Court for D.C.*, No. 10-1114, 2010 WL 2639960, at *1 (D.D.C. June 30, 2010) ("[T]he mandamus statute [28 U.S.C. § 1361] applies to . . . matters arising in the executive branch and its administrative agencies.") (internal quotation marks and citation omitted); *see also Trackwell v. U.S. Government*, 472 F.3d 1242, 1247 (10th Cir. 2007); *Liberation News Service v. Eastland*, 426 F.2d 1379, 1384 (2d Cir. 1970) ("[I]n enacting [ ] § 1361 . . . Congress was thinking solely in terms of the executive branch."); *Semper v. Gomez*, 747 F.3d 229, 250-51 (3d Cir. 2014).  Hence, unlike in *WLF II*, where the statutory right to mandamus in section 1361 could serve as the basis for the *Larson-Dugan* exception, no such statutory basis exists here.

Having no statute to ground Plaintiff's claim, this case presents simply an allegation that a government official violated the common law – a claim that is not

---

[8]  The case cited for support in *WLF II*, *Chamber of Commerce v. Reich*, refers to the *Larson-Dugan* exception applying where "the federal officer, against whom injunctive relief is sought, allegedly acted in excess of his legal authority," 74 F.3d at 1329, but the claim in that case was that the Secretary of Labor violated the National Labor Relations Act and the Procurement Act – federal *statutes* – and the Constitution.  *See id.* at 1325.

a sufficient basis for application of the *Larson-Dugan* exception.  *Cf. Maynard v. Architect of the Capitol*, 544 F. Supp. 3d 64, 81 (D.D.C. 2021) (finding allegations that legislative branch defendant violated duty owed plaintiff arising out of defendant's human resources manual insufficient to trigger application of *Larson-Dugan* exception as "defendant's human resources manual is not a statute.").

As the Supreme Court in *Larson* explained, it is the officer's acting beyond his or her *statutory* authority that transforms the officer's acts into "individual and not sovereign actions" that lose the cloak of sovereign immunity.  337 U.S. at 689. That the officer in carrying out his duties may allegedly violate the common law is not sufficient to remove the protection of sovereign immunity.  *See id.* ("We hold that if the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they are tortious under general law[.]").  The Court explained:

> [I]n a suit against an agency of the sovereign, it is not sufficient that
> [plaintiff] claim [an invasion of his recognized legal rights].  Since
> the sovereign may not be sued, it must also appear that the action to
> be restrained or directed is not action of the sovereign.  The mere
> allegation that the officer, acting officially, wrongfully holds property
> to which the plaintiff has title does not meet that requirement. True, it
> establishes a wrong to the plaintiff.  But it does not establish that the
> officer, in committing that wrong, is not exercising the powers
> delegated to him by the sovereign.  If he is exercising such powers the
> action is the sovereign's and a suit to enjoin it may not be brought
> unless the sovereign has consented.

*Id.* at 693 (internal footnotes and citations omitted).  Permitting a common law

34

claim to waive sovereign immunity would effectively turn the *Larson-Dugan*
exception into a blanket waiver of all non-monetary claims of any kind against any
branch of the federal government.  Such a conclusion has never been adopted by
the Supreme Court and would signify a novel and substantial departure from
federal sovereign immunity law.

>    **B.    No Duty to Disclose the Report Exists Under the Common
>    Law Right of Access to Public Records, and, Therefore,
>    Senate Defendants Enjoy Sovereign Immunity From
>    Plaintiff's Suit.**

Having concluded that the *Larson-Dugan* exception applied if there was a
common law duty to disclose the Report, the court below determined that "the
merits of plaintiff's request for disclosure of the classified Report under the
common-law right of access must be considered to assess whether sovereign
immunity bars this lawsuit."  Opinion at 16.   Because there is no duty to disclose
the Report to Plaintiff under the common law, the district court correctly held that
sovereign immunity barred Plaintiff's claim.

>    1.    The Common Law Right of Access to Public Records
>    Does Not Apply to Documents of a House of Congress.

Senate defendants argued below that the common law right of access does
not apply to Senate records at all.  The district court disagreed, stating that
"[b]inding precedent in this Circuit ensures that 'the common law right of access
extends beyond judicial records to the 'public records' of all three branches of

35

government.'"  Opinion at 17 (quoting *Center for Nat'l Security Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 936 (D.C. Cir. 2003)).  However, despite the reference in Circuit precedent to that common law right applying to "all three branches," this Court has never applied the doctrine to the records of the House or Senate.[9]  Senate defendants submit that applying that common law doctrine to Senate documents conflicts with the constitutional powers granted to Congress under our system of separated powers, previous affirmations by this Court recognizing Congress's authority over its documents, and the nature of congressional activity.  Accordingly, if it reaches the issue, the Court should hold that common law doctrine inapplicable to Senate records.

The Constitution provides that "Each House shall keep a Journal of its

---

[9]  *See, e.g.*, *Judicial Watch*, 998 F.3d at 993 (dismissing on Speech or Debate Clause ground and not addressing merits of common law right of access claim).  While the district court in *Schwartz v. U.S. Dep't of Justice* held that "Congress is subject to the common law rule which guarantees the public a right to inspect and copy public records[,]" 435 F. Supp. 1203, 1204 (D.D.C. 1977), and in *WLF II*, this Court cited the *Schwartz* decision as having been affirmed, 595 F.2d 888 (D.C. Cir. 1979) (table), *see WLF II*, 89 F.3d at 903, the Court of Appeals in *Schwartz* actually only affirmed a later district court ruling regarding the Department of Justice's withholding under FOIA, which did not involve the applicability to Congress of the common law right of access to public records.  *See Report of the Comm. on the Judiciary of the House of Representatives Identifying Court Proceedings and Actions of Vital Interest to Congress*, No. 5, 97th Cong., at 94-97 (Comm. Print 1980) (H. Print No. 97-5) [JA 42-45]; *Report of the House Select Comm. on Congressional Operations and the Senate Comm. on Rules and Admin. on Court Proceedings and Actions of Vital Interest to Congress,* Part 6, 95th Cong., at 106-09, 275-81 (Comm. Print 1978) [JA 54-57, 60-67].

Proceedings, and from time to time publish the same, excepting such parts as may in their Judgment require Secrecy." U.S. Const. art. I, § 5, cl. 3 (Journal Clause). This clause provides Congress with the authority to determine which records of its proceedings to make public and which to keep secret. As this Court has found, "Congress has undoubted authority to keep its records secret, authority rooted in the Constitution, longstanding practice, and current congressional rules." *Goland*, 607 F.2d at 346 (citing Journal Clause, U.S. Const. art. I, § 5, cl. 3) (footnotes omitted); *United We Stand America, Inc. v. IRS*, 359 F.3d 595, 599 (D.C. Cir. 2004) (noting that D.C. Circuit in *Goland* "emphasiz[ed] Congress' right to keep its own materials confidential"). In FOIA cases involving congressional records in the hands of Executive agencies, the Court of Appeals has noted that compelling disclosure of the documents under that statute "would force Congress 'either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role.'" *United We Stand*, 359 F.3d at 599 (quoting *Goland*, 607 F.2d at 346) (emphasis added); *see also ACLU v. CIA*, 823 F.3d at 663. To whatever extent the common law right of public access applies to government documents generally, the Constitution's Journal Clause supersedes that right with regard to Congress's own documents and gives the House and Senate each the authority to determine which of their respective records to keep confidential.

The Constitution also allocates to each House of Congress the authority to "determine the Rules of its Proceedings." U.S. Const. art. I, § 5, cl. 2. Pursuant to this power, the Senate has enacted various rules governing the disclosure and dissemination of Senate documents. *See* Rules XI, XXIX.5 of the Standing Rules of the Senate. In addition, the Senate has established specific rules regarding the disclosure of sensitive information by SSCI, particularly classified material such as the Report. *See* S. Res. 400, 94th Cong., 2d Sess., § 8 (1976), as amended; *id.* § 4(a); *see also* SSCI Committee Rule 9 ("Procedures for Handling Classified or Committee Sensitive Material").[10]

Consequently, to the extent that there was any recognized common law right of access to legislative branch records, the Senate rules, enacted pursuant to its constitutional authority, have displaced it. *See In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998) ("[E]ven if there were once a common law

---

[10] The Senate has also established procedures for archiving committee records and provided for a default schedule for public availability for records held at the National Archives, as appropriate. *See* Senate Rule XI.2 ("The Secretary of the Senate shall obtain at the close of each Congress all the noncurrent records of the Senate and of each Senate committee and transfer them to the National Archives and Records Administration for preservation, subject to the orders of the Senate."); S. Res. 474, 96th Cong. (1980), reprinted in S. Doc. No. 116-1, at 194-96 (2020) (providing rules for public access to Senate records, including committee records, deposited with National Archives, but not authorizing public disclosure if "prohibited by law or Executive order"); *see also In re Shepard*, 800 F. Supp. 2d 37, 40 (D.D.C. 2011) ("The U.S. Senate and House of Representatives determine the rules of access to congressional records held by NARA.").

right of access to materials of the sort at issue here, the common law has been

supplanted by Rule 6(e)(5) and Rule 6(e)(6) of the Federal Rules of Criminal

Procedure."); *see also McKeever v. Barr*, 920 F.3d 842, 848-49 (D.C. Cir. 2019).

Imposing a common law right of access to Senate records would contravene

these Senate rules and procedures and undermine the powers granted the Senate in

the Journal and Rulemaking Clauses, thereby infringing on the separation of

powers between the branches.  "Decisions regarding public access to

congressional records are properly committed to Congress. The judiciary has never

asserted the institutional competence to make such decisions, and there is no

principled basis for doing so here."  *In re Shepard*, 800 F. Supp. 2d at 41; *see also*

*Exxon Corp. v. FTC*, 589 F.2d 582, 590 (D.C. Cir. 1978) ("[W]here constitutional

rights are not violated, there is no warrant for the judiciary to interfere with the

internal procedures of Congress[.]"); *Harrington v. Bush*, 553 F.2d 190, 214 (D.C.

Cir.1977) (citing Rulemaking Clause and stating that "[i]n deference to the

fundamental constitutional principle of separation of powers, the judiciary must

take special care to avoid intruding into a constitutionally delineated prerogative

of the Legislative Branch").

The application of the common law right of public access is particularly

ill-suited to the records of Congress.  Congress has traditionally provided broad

access to its activities.  Senate floor proceedings were first opened to the public in

39

1795, have been broadcast on live television since 1986, and are made available to the public in the printed Congressional Record and archived on the Senate website (www.senate.gov). Most committee hearings and business meetings are also broadcast or live-streamed and archived on the Senate website – and notices of these activities are circulated beforehand. *See* Senate Rules XXVI.5(b) & (e), XXVI.4(a). Committee reports and other Senate documents are available to the public (again, excepting those with sensitive or classified information) on-line at Senate websites and, generally, through the web portal of the Government Publishing Office (www.govinfo.gov). Hence, Congress routinely makes materials publicly available beyond what would be required under the common law.

As to those limited instances when committee reports or hearings or floor proceedings are not made public, Congress is best-situated, congruent with the independent functioning of the legislature mandated by the Constitution's separation of powers, to make such determinations for itself and has established rules for doing so. *See, e.g.*, Senate Rules XXI, XXXI.2, and XXVI.5(b) (providing for specific instances when Senate floor proceedings or committee meetings may be closed to the public).

Accordingly, in light of the constitutional bases for Congress's control of its records, D.C. Circuit precedent recognizing Congress's "undoubted authority to

keep its records secret" as it determines necessary, and the fact that congressional proceedings are already conducted largely in public, the common law right of access does not apply to Senate documents generally or the committee report sought here.

> 2.   The District Court Correctly Held That the Report Is Not Subject to Compelled Disclosure Under the Common Law Right of Access to Public Records.

Even if the common law right of access to public records applies to the Senate, the Report is not subject to disclosure under that doctrine. The district court correctly analyzed Plaintiff's claim under the "two-step process" established by this Court "for determining whether the common-law right of access applies":

> First, a court must decide "whether the document sought is a 'public record,'" and, if it is, then, second, "the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure[.]"

Opinion at 17 (quoting *WLF I*, 17 F.3d at 1451-52); *see also WLF II*, 89 F.3d at 899. Under the common law right of access, "a 'public record' . . . is a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." *WLF II*, 89 F.3d at 905. This definition is meant to "adequately protect the public's interest in keeping a watchful eye on the workings of public agencies . . . yet narrow enough to avoid the necessity for judicial application of the second-step balancing test to documents that are

41

preliminary, advisory, or, for one reason or another, do not eventuate in any official action or decision being taken."  *Id.*

The Committee conducts its investigative activities to aid and inform the Senate's consideration of legislation with regard to intelligence activities and programs by reporting to the Senate on investigations and studies the Committee has undertaken.  *See* S. Res. 400, 94th Cong. (1976) (establishing SSCI "to oversee and make continuing studies of the intelligence activities and programs of the United States Government and to submit to the Senate appropriate proposals for legislation and *report to the Senate concerning such intelligence activities and programs*.") (emphasis added).

As the district court analogized, the SSCI report is similar to materials prepared by a subsidiary entity to advise or inform its parent body – matters held not to be "public records" in *WLF II*, 89 F.3d at 906 (materials of Advisory Working Group recommending sentencing guidelines to Sentencing Commission), and *Pentagen Technologies Int'l, Ltd. v. Comm. on Appropriations of the United States House of Representatives ("Pentagen Technologies")*, 20 F. Supp. 2d 41 (D.D.C. 1998) (investigative reports by committee staff), *aff'd on other grounds*, 194 F.3d 174 (D.C. Cir. 1999).  Opinion at 18.  Consequently, the Report, "[t]hough undeniably a form of Committee action, [] was preliminary to any final recommendation or proposed legislation such that this action lacks the legal

42

significance to constitute a 'public record' to which the right of public access attaches." Opinion at 19.

Plaintiff takes issue with the district court's conclusion that the Report was a "preliminary and advisory" document reported to the Senate. *See* Appellant's Br. at 20. Plaintiff argues that this conclusion was erroneous as it "was entirely based on SSCI's false implications about the nature of the Report," and that "Sen. Feinstein explained *many times* how the purpose of the Report was not focused on the legislative process[.]" *Id.* at 21. Yet, Senator Feinstein's entreaty that the Report also be used to inform the Executive Branch's intelligence agencies in their future detention and interrogation policies does not undermine the fact that the Committee was reporting its findings to the *Senate* for the *Senate*'s consideration and use in making legislative decisions regarding intelligence activities. Nor does it transform the Report into something other than what the court below found it to be – an action "preliminary to any final recommendation or proposed legislation," thus "lacking the legal significance to constitute a 'public record' to which the right of public access attaches." Opinion at 19. Indeed, as was cited above, *supra* at 22, the Senate subsequently considered and adopted relevant legislation on detention and interrogation policies.

Even if the Report were a "public record," the court below correctly found that Plaintiff's demand would fail the second step of the common law test, as the

government's interest in keeping the Report secret outweighs the public's interest in disclosure.  *See* Opinion at 20.  This Court has recognized that "the government 'has a *compelling* interest in protecting . . . the secrecy of information important to our national security . . . ,'" *Dhiab*, 852 F.3d at 1098 (quoting *McGehee v. Casey*, 718 F.2d 1137, 1143 (D.C. Cir. 1983)), and has explained that this compelling interest in confidentiality outweighs any countervailing public interest in disclosure under the common law right of access.  Hence, "[t]he law of this circuit is that the need to 'guard against risks to national security interests' overcomes a common-law claim for access." *Dhiab*, 852 F.3d at 1098 (quoting *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980)); *see also Dhiab*, 852 F.3d at 1098 ("Because keeping the [classified] recordings sealed is narrowly tailored to protect the government's compelling interest in guarding national security, intervenors cannot prevail on their common-law claim.").

The Report is classified based on the determination that it contains information the release of which could damage the national security of the United States.  Specifically, as the district court explained, "the Report contains highly classified information about the CIA's detention and interrogation policies and procedures that would compromise national security if released, far outweighing the public's interest in disclosure." Opinion at 20.  Indeed, in matters involving sensitive national security information, courts should defer to the political

44

branches in determining the extent to which that information should be made public. *Cf. Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) ("'For reasons . . . too obvious to call for enlarged discussion,' the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it . . . .") (quoting *CIA v. Sims*, 471 U.S. 159, 170 (1985)); *Center for Nat'l Security Studies*, 331 F.3d at 926-27.

Further weighing against any interest in public disclosure of the classified Report is the fact that the Report's Findings and Conclusions and 500-page Executive Summary have been declassified and released publicly, with minimal redactions. *See ACLU v. CIA*, 823 F.3d at 660 (referencing declassified Executive Summary as "minimally redacted"). Whatever additional benefit to the public interest might be gained from releasing the full Report cannot outweigh the government's compelling interest in maintaining its confidentiality.

Plaintiff argues that the district court's conclusion on the balancing of interests was wrong because "it ignored the fact that Musgrave openly admitted that he expected a redacted version would be released, and that he only sought the full Report so that the redaction process would begin." Appellant's Br. at 22. Yet, Plaintiff's request that the court order the Committee to engage the Executive Branch in declassifying the full Report so that a redacted version could be released

45

was absent from his complaint. *See* Compl., Prayer for Relief [JA 18] ("Plaintiff Musgrave prays that this Court . . . Order Defendants Warner and SSCI to provide the Torture Report to him"). Moreover, Plaintiff points to no legal authority that authorizes courts to order the Senate or one of its committees to request, let alone demand, a declassification review from the Executive Branch for a congressional committee report. Directing the actions of a congressional committee related to such classification determinations would constitute an unprecedented intrusion into Legislative Branch activities in disregard of the separation of powers. *See Hearst v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936) ("[T]he universal rule, so far as we know it, is that the legislative discretion in discharge of its constitutional functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference."); *cf. Doe v. McMillan*, 412 U.S. at 313 ("[W]e have no authority to oversee the judgment of the committee" as to what information to include in publicly-released committee report). Finally, Plaintiff's request that the Court order the Senate defendants to request a declassification review is inconsistent with his claim that the document is a *public* record.

Accordingly, the Court should affirm the district court's ruling that the common law right of access does not require Senate defendants to disclose the Report, and, therefore, the *Larson-Dugan* exception does not apply and Plaintiff's suit is barred by sovereign immunity.

46

**III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING PLAINTIFF'S REQUEST FOR DISCOVERY AND AN EVIDENTIARY HEARING.**

In opposing Senate defendants' motion to dismiss, Plaintiff requested that he be allowed to pursue discovery from Senate defendants and present testimony at an evidentiary hearing before the court decided the motion.  The district court rejected that request finding that the "lack of subject-matter jurisdiction over this suit also bars plaintiff's request for limited discovery in lieu of dismissal." Opinion at 20 n.12 (citing Pl.'s Opp. at 21-22).   Plaintiff asserts that the district court erred by not granting his request because the purpose of such discovery "would be to determine if subject matter exists."  Appellant's Br. at 23.  Yet, contrary to Plaintiff's assertion, his requested discovery and evidentiary hearing are neither necessary to resolve defendants' jurisdictional defenses nor relevant to either the Speech or Debate Clause or sovereign immunity defenses, both of which were appropriately decided on the allegations in the complaint.

Plaintiff seeks evidence "about the purposes of the Torture Report and the exchanges SSCI had with the Executive Branch about it[.]"  *Id.* at 24.  A committee's "purpose" or "motivation" in preparing and issuing a report of an investigation, however, does not alter the legislative nature of these acts and, thus, cannot diminish or remove the protections of the Clause.  *See Barenblatt*, 360 U.S. at 132 ("So long as Congress acts in pursuance of its constitutional power, the

47

Judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power."); *Watkins v. United States*, 354 U.S. 178, 200 (1957) ("[T]esting the motives of committee members" to determine if there is a legislative purpose "is not [the Court's] function."); *see also Eastland*, 421 U.S. at 508 ("Our cases make clear that in determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it.").  In addition, while SSCI's communications with the Executive Branch were pertinent to establishing that the Report was a congressional record for purposes of FOIA, *see ACLU v. CIA*, 823 F.3d at 343-51, they are not relevant to whether the Committee is immune from suits to compel release of the Report.

Furthermore, the discovery Plaintiff requests – to compel production of documents, take deposition testimony, and to "question an SSCI official under oath in the District Court's presence," Appellant's Br. at 24 – is itself barred by the Speech or Debate Clause, as the proposed discovery would question Senators and staff with regard to their legislative activities supporting the Report.  *See Howard*, 720 F.3d at 946 (Clause protects Members and staff "from being compelled to answer questions about legislative activity or produce legislative materials," including regarding "staff members' preparations for legislative activities"); *Brown & Williamson*, 62 F.3d at 418-21; *MINPECO, S.A.*, 844 F.2d at 859 (noting that "[d]iscovery procedures can prove just as intrusive" to Members

and staff as a lawsuit); *see also Helstoski*, 442 U.S. at 489 ("The Clause protects 'against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'") (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972)); *McSurely v. McClellan*, 521 F.2d 1024, 1032 (D.C. Cir. 1975). Indeed, allowing discovery in this case would be contrary to the Supreme Court's admonition that "the [Speech or Debate] clause not only provides a defense on the merits but also protects a legislator from the burden of defending himself." *Powell v. McCormack*, 395 U.S. 486, 502-03 (1969).

Plaintiff offers no authority supporting his request that discovery should be permitted before resolving a motion to dismiss on Speech or Debate Clause grounds. Rather, the two cases Plaintiff does cite, Appellant's Br. at 23-24, involved evidentiary hearings about whether a plaintiff had stated a claim under 42 U.S.C. § 1983, *Kregler v. City of New York*, 608 F. Supp. 2d 465 (S.D.N.Y. 2009), *vacated on other grounds*, 375 F. App'x 143 (2d Cir. 2010), and whether there was equitable tolling of a limitations period, *Rivera-Gomez v. de Castro*, 900 F.2d 1 (1st Cir. 1990). In contrast, this Court recently affirmed the dismissal of a common-law-right-of-access suit on Speech or Debate Clause grounds without the need for discovery. *See Judicial Watch*, 989 F.3d 991-93.

Accordingly, the district court did not err – much less abuse its discretion – in declining Plaintiff's request to take discovery or hold an evidentiary hearing.

## CONCLUSION

For these reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

 /s/ Morgan J. Frankel
MORGAN J. FRANKEL
morgan_frankel@legal.senate.gov
D.C. Bar #342022
Senate Legal Counsel

PATRICIA MACK BRYAN
pat_bryan@legal.senate.gov
D.C. Bar #335463
Deputy Senate Legal Counsel

THOMAS E. CABALLERO
thomas_caballero@legal.senate.gov
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel)
(202) 224-3391 (fax)

April 17, 2023

Counsel for Appellees Senator Mark
Warner and the Senate Select
Committee on Intelligence

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION AND
## TYPEFACE AND TYPE-STYLE REQUIREMENTS
## OF FED. R. APP. P. 32(a)

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), and the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because:

(1) this brief contains 12,149 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1); and

(2) this brief has been prepared in a proportionally spaced typeface using Word Perfect 2020 in Times New Roman, 14-point font.

 /s/ Morgan J. Frankel____
MORGAN J. FRANKEL

## CERTIFICATE OF SERVICE

I certify that, on April 17, 2023, I filed electronically the foregoing Brief of

Appellees with the Clerk of the Court using the CM/ECF system, which will

provide notice of electronic filing to the following:

Kelly B. McClanahan, Esq.
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853

Counsel for Appellant

 /s/ Morgan J. Frankel
MORGAN J. FRANKEL