No. 22-5252

[ORAL ARGUMENT NOT YET SCHEDULED]

**UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT**

_____

SHAWN MUSGRAVE,

*Plaintiff-Appellant*,

v.

MARK WARNER, *et al.*,

*Defendant-Appellees*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
No. 1:21-cv-02198 (Beryl A. Howell, C.J.)

_____

**REPLY BRIEF FOR PLAINTIFF-APPELLANT**
_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellant*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................... i

TABLE OF AUTHORITIES .............................................................. ii

GLOSSARY.................................................................................... iii

SUMMARY OF ARGUMENT ........................................................ 1

ARGUMENT .................................................................................. 1

      I.     SOME ARGUMENTS ARE NOT APPROPRIATE.................. 2

            A.     Arguments Made Only by Amicus .................................... 2

            B.     Arguments Rejected by the District Court......................... 9

      II.    OTHER ARGUMENTS SIMPLY LACK MERIT ..................... 10

CERTIFICATE OF SERVICE ......................................................... 13

CERTIFICATE OF COMPLIANCE.................................................. 14

# <u>TABLE OF AUTHORITIES</u>

**Cases:**                                                                                                        **Pages**

*\*Eldred v. Ashcroft*, 255 F.3d 849 (D.C. Cir. 2001) ........ ......... ........ ........ 2

*In re Application of Newsday, Inc.*, 895 F.2d 74 (2d Cir. 1990) .. ......... ......... 6

*Judicial Watch v. DOD*, 715 F.3d 937 (D.C. Cir. 2013) ... ......... ........ ........ 4

*\*Michel v. Anderson*, 14 F.3d 623 (D.C. Cir. 1994) ........ ......... ........ ........ 2

*New Jersey v. New York*, 523 U.S. 761 (1998)........ ......... ......... ........ ........ 2

*United States v. Mitchell*, 551 F.2d 1252 (D.C. Cir. 1976) ......... ........ ........ 6

*\*Wash. Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897 (D.C. Cir. 1996) . 9

**Statutes and Rules:**

Exec. Order 13,526 ........ ......... ........ ......... ........ ........ ......... ........ ........ 7

House R. X. ........ ......... ........ ......... ........ ......... ........ ......... ........ ........ 4

S. Res. 400, 94th Cong., 2d Sess. (1976)........ ......... ........ ......... ........ 3, 4

**Legislative History:**

SSCI, S. Rept. 113-288 ... ......... ........ ......... ........ ........ ......... ........ ........ 11

## **GLOSSARY**

| | |
|---|---|
| FOIA | Freedom of Information Act |
| Musgrave | Appellant Shawn Musgrave |
| SSCI | Senate Select Committee on Intelligence |
| Torture Report | Senate Report 113-288, *Report of the Senate Select Committee on Intelligence: Committee Study of the Central Intelligence Agency's Detention and Interrogation Program* |

## SUMMARY OF ARGUMENT

The District Court erred by concluding that Senate Report 113-288, *Report of the Senate Select Committee on Intelligence: Committee Study of the Central Intelligence Agency's Detention and Interrogation Program* ("the Torture Report" or "the Report") was covered by the Speech or Debate Clause of the U.S. Constitution and that it was not a public record. The District Court also erred by concluding that the Senate Select Committee on Intelligence's interest in secrecy outweighed the public's interest in disclosure, that Appellant Shawn Musgrave's ("Musgrave") request for a sanitized version of the Report was moot, and that Musgrave's request for limited discovery was also barred by the Speech or Debate Clause. The District Court did not err by concluding that the common law right of access to public records did not apply to records of Congress *per se* and that sovereign immunity barred this lawsuit without resort to analysis under *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), and *Dugan v. Rank*, 372 U.S. 609 (1963) (collectively "*Larson-Dugan*"). The Court should reverse this case.

## ARGUMENT

Musgrave provided numerous reasons why the District Court's decisions in this case should be reversed, and Appellees Mark Warner and SSCI (collectively "SSCI"), purportedly aided by the United States as *amicus curiae* ("Amicus"), fail

1

to refute any of them. Accordingly, for the most part Musgrave will not reiterate the arguments from his Opening Brief, which he stands behind, but will instead simply point out the flaws and fallacies in SSCI's and Amicus's briefs so that the Court can judge for itself the respective merits of the respective positions.

## I.     SOME ARGUMENTS ARE NOT APPROPRIATE

As an initial matter, both SSCI and Amicus make arguments which are not appropriate for this appeal, either because they were decided in Musgrave's favor below or because they were only raised by Amicus. Accordingly, those arguments will be briefly addressed first.

### A.     Arguments Made Only by Amicus

The general rule in this Circuit is that the Court "would not entertain an amicus' argument if not presented by a party." *Michel v. Anderson*, 14 F.3d 623, 625 (D.C. Cir. 1994). This Court has further held that it is "particularly inappropriate" to entertain an argument made by an *amicus curiae* when the party ostensibly being supported has taken a contrary position. *Eldred v. Ashcroft*, 255 F.3d 849, 850-51 (D.C. Cir. 2001) (citing *New Jersey v. New York*, 523 U.S. 761, 781 n.3 (1998)). Amicus makes two arguments which are not properly before this Court because SSCI does not raise them or, in one instance, because SSCI actually makes the opposite argument.

The first such argument is the claim that *only* the President and the Executive Branch possess the constitutional authority to classify and declassify information and control who has access to classified information. (*See* Br. for United States as Amicus Curiae Supp. Appellees, Dkt. #1996239, at 18-23 (filed Apr. 24, 2023) ("Neither Senator Warner nor the Committee has authority to undertake a declassification review of the Report to create a redacted copy suitable for public release.") [hereinafter Amicus Br.].) In this case, not only has SSCI taken a contrary position in this appeal, but it has consistently taken a contrary position for its *entire existence*.

"Senate Resolution 400, as amended, specifies the mechanism for SSCI to disclose information publicly, including intricate procedures for SSCI to seek to disclose classified information it has received." (Br. of Appellees, Dkt. #1994991, at 5 (filed Apr. 17, 2023) [hereinafter SSCI's Br.] (citing S. Res. 400, 94th Cong., 2d Sess., § 8 (1976) [hereinafter S. Res. 400]).) "[T]he Senate has established specific rules regarding the disclosure of sensitive information by SSCI, particularly classified material such as the Report." (*Id.* at 38 (citing S. Res. 400 § 8 and SSCI Comm. R. 9 ("Procedures for Handling Classified or Committee Sensitive Material")).) Senate Resolution 400, for its part, specifically provides that the Senate may declassify and release classified material *even over the President's objection* if it follows the prescribed process:

> If the President, personally, in writing, notifies the Majority Leader and Minority Leader of the Senate and the select Committee of his objections to the disclosure of such [classified] information . . . , [the Senate may vote in closed session to] approve the public disclosure of all or any portion of the information in question, in which case the committee shall publicly disclose the information ordered to be disclosed.

S. Res. 400 §§ 8(b)(3)-8(b)(5).[1] It would be "particularly inappropriate," therefore, for this Court to entertain a constitutional argument advanced only by Amicus which has been explicitly rejected by the actual Appellees in the case.

Furthermore, even if the Court were inclined to consider Amicus's argument, even Amicus implicitly admits that both statutory law—in the form of the Freedom of Information Act ("FOIA")—and case law reject such a blanket assertion. As Amicus notes, "[t]hrough FOIA, Congress has authorized courts to compel disclosure of classified information if the agency withholding the information cannot demonstrate that it meets 'both substantive and procedural criteria for classification.'" (Amicus Br. at 22 (quoting *Judicial Watch v. DOD*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam)).) If the Executive Branch has plenary constitutional authority to classify and declassify information, then courts cannot consider whether a particular piece of information meets the substantive criteria for classification, with or without Congressional authorization. Yet, as

---

[1] The House of Representatives, for its part, has a comparable process built into its rules for the disclosure of classified information over the President's objection. *See* House R. X(11)(g)(2).

4

Amicus is compelled to acknowledge, courts clearly have such authority pursuant to this Circuit's controlling precedent, and that authority comes from Congress. This Court can only accept Amicus's argument if it reverses its own controlling precedent—which would require an *en banc* decision—and completely invalidates the concept of judicial review over the substance of agency determinations that material is exempt from disclosure under FOIA Exemption (b)(1).

Amicus's second inappropriate argument comes at the end of its brief, when it devotes four pages to arguing that the concepts of segregability and official acknowledgement do not apply to common law right of access cases. (*Id*. at 27-30 ("More fundamentally, the concepts that Musgrave invokes—segregability and official acknowledgement—are limitations imposed by FOIA on an agency's ability to withhold information requested under that statute.").) This argument was not raised by SSCI and has therefore been waived, and the Court cannot consider it simply because it was raised by Amicus. Moreover, even if it had not been waived, it lacks any merit, and one only need to consider Amicus's own arguments to see as much.

Amicus claims that these concepts "function as tools to distinguish information that is properly classified . . . from that which is not properly classified, and therefore subject to FOIA's general rule that agencies must make their records available upon request." (*Id.* at 28.) If one simply replaces "FOIA's"

with "the common law's" and "agencies" with "governmental entities," the

resulting statement that information "which is not properly classified . . . [is]

subject to the common law's general rule that governmental entities must make

their records available upon request" fits squarely within the core jurisprudence

regarding the common law right of access: "The common law has long recognized

a right to inspect and copy public records. . . . American courts tended to view any

limitation as repugnant to the spirit of our democratic institutions.'" *United States

v. Mitchell*, 551 F.2d 1252, 1257 (D.C. Cir. 1976) (quotations omitted). The

segregability and official acknowledgement doctrines are, contrary to Amicus's

assertion, inextricably part of the common law right of access, which Amicus—

again begrudgingly—acknowledges. (Amicus Br. at 29 ("In some circumstances, a

district court may balance competing interests by releasing a redacted version of a

document sought under the common law affording access to judicial records.")

(citing *In re Application of Newsday, Inc.*, 895 F.2d 74 (2d Cir. 1990)).)[2]

---

[2] This inescapable fact also demonstrates the lack of merit in SSCI's argument that
Musgrave's "request that the Court order the Senate defendants to request a
declassification review is inconsistent with his claim that the document is a *public*
record." (SSCI's Br. at 46.) The common law right of access—not to mention
FOIA—would be gutted if the presence of a single piece of non-public information
in an otherwise public record rendered that record not a public record. This is a fact
that any judge who has ever entertained a motion to unseal knows well, and it is
unbecoming for an attorney representing the United States Senate to even suggest
otherwise.

Furthermore, the very nature of classification decisions reveals the weakness in Amicus's argument. Amicus correctly states that "[t]here is a similar tradition of secrecy for *information* that could harm the national security if publicly disclosed" (Amicus Br. at 16 (emphasis added)) without clarifying that not all *information* contained in a classified document is itself classified, even though it tacitly admits that in a FOIA context the purpose of these doctrines is in fact to "distinguish information that is properly classified . . . from that which is not properly classified." (*Id.* at 28.) Information which has been previously officially disclosed is not only not withholdable under FOIA, it is *not properly classified*.

And even when there is not an official acknowledgement, the governing Executive Order requires unclassified information contained in classified documents to be *marked as such*, Exec. Order 13,526 § 1.6(c) (requiring agencies to "by marking or other means, indicate which portions are classified, with the applicable classification level, and which portions are unclassified"). This portion marking requirement invalidates Amicus's concern that "any error in the scope of redaction [would be] likely to harm national security" if the Executive Branch were not part of such litigation (Amicus Br. at 29), since the document being reviewed by the District Court would already have the informed opinion of the Executive Branch—in the form of portion markings—of the classification status of

7

each paragraph contained in the Report.[3] Even if this Court were to reject the official acknowledgement doctrine altogether, there is no legitimate reason that paragraphs marked as unclassified in the Report should be withheld from the public on national security grounds, and ordering that information marked as unclassified must be released "would [not] require courts to override Executive Branch determinations in this area." (*Id*. at 20.)

By the same token, once this Court accepts that the segregability and/or official acknowledgement doctrines apply in this case, the District Court's finding that "Plaintiff's demand would fail the second step of the common law test" (SSCI's Br. at 43) falls apart. That finding was based entirely on the argument that "the government's interest in keeping the Report secret outweighs the public's interest in disclosure" (*id.* at 43-44), which itself was based entirely on the assertion that "[t]he Report is classified based on the determination that it contains information the release of which could damage the national security of the United States." (*Id.* at 44.) (*See also* Amicus Br. at 15 ("Because classified documents are, by their very nature, not public, the common law right does not apply and the inquiry is over.").)

---

[3] Additionally, there is nothing prohibiting the Executive Branch from intervening in this case if it believes that its interests are not being adequately represented.

8

Accordingly, Amicus's reasonable-sounding assertion that "the risk of harm to the national security associated with the disclosure of classified information compels a *per se* rule that the balance of interests can never favor public access while the materials sought remain classified" (*id.* at 23) is completely inapplicable in this particular case, since the "materials" being sought are the portions of the Report which are not classified. Viewed through this lens, a significant portion of the District Court's opinion and most of both SSCI's and Amicus's briefs have no relevance to the actual issues in controversy and can be easily discounted.

## B.    Arguments Rejected by the District Court

SSCI also attempts in this case to relitigate two arguments already rejected by the District Court, and this is not the proper forum for such review. First, it must be clarified that when SSCI claims that "the court held that the *Larson-Dugan* exception does not apply, and sovereign immunity bars Plaintiff's suit" (SSCI's Br. at 13), this is an extremely misleading statement, even if it might be considered technically accurate. As SSCI acknowledges, the District Court *rejected* its argument "that the *Larson-Dugan* exception has no application here at all, because Plaintiff alleges no violation by Senate defendants of either statutory authority or a constitutional limitation." (*Id.* at 30.) As recognized by SSCI, the District Court "interpreted this Court's decision in [*Washington Legal Foundation v. U.S. Sentencing Commission*, 89 F.3d 897 (D.C. Cir. 1996)] as having applied the

9

*Larson-Dugan* exception in a common-law-right-of-access suit based only on the duty 'stemm[ing] from the common-law right itself, not a separate statute or regulation.'" (*Id.* at 31-32.) Accordingly, it is not proper for this Court to reconsider the District Court's well-reasoned rejection of SSCI's argument on its own.

Similarly, SSCI attempts to relitigate its argument that "the common law right does not apply to documents of a House of Congress" *at all* (*id.* at 15), which the District Court also rejected. This attempt is even less appropriate than the last one, since, as SSCI acknowledges, the District Court made its decision because of this Court's *controlling precedent*. (*Id.* ("Senate defendants recognize that this Circuit has stated that the common law right of access applies to all three branches of government.").) Accordingly, since this Panel is bound by the same precedent that the District Court was, it cannot seriously entertain SSCI's argument that the District Court erred in rejecting this argument.

## II.    OTHER ARGUMENTS SIMPLY LACK MERIT

SSCI makes two other arguments which warrant a brief response. First, SSCI contends that the Torture Report was deliberative, when contemporaneous statements indicate otherwise. Second, it improperly argues that the District Court's decision regarding Musgrave's discovery request is reviewed for abuse of discretion, when the appropriate standard of review is *de novo*.

Musgrave already exhaustively addressed the argument that the Report was written "to aid in Senate consideration of legislation" (*id.* at 16) and will not repeat those arguments here, but he will briefly add further evidence drawn from the remarks made by the very Senators who later attempted to claw back the Report from the Executive Branch. The "Minority Views" section of the Report explicitly states that "the Study *does not offer any recommendations* for improving intelligence interrogation practices, intelligence activities, or covert actions." SSCI, S. Rept. 113-288 at 525, *available at* https://www.govinfo.gov/content/pkg/CRPT-113srpt288/pdf/CRPT-113srpt288.pdf (last accessed May 19, 2023)) (emphasis added). In the future Chair's own words, "No version of the Study, updated or otherwise, has ever contained any recommendations. Moreover, there are no lessons learned, nor are there any suggestions of possible alternative measures." *Id.* at 528. This evidence from the proverbial horse's mouth is fatal to SSCI's argument, which consistently emphasizes the Supreme Court's admonition that "the Clause's protections are absolute" (*id.* at 20) but elides over the key caveat that this is only true "where it applies." (*Id.* at 20, 24.) As *Gravel* indicates, it only *applies* where the record is intended to be deliberative, and this Report was never intended to be deliberative (nor, in fact, was it).

SSCI also argues that the Court must review the District Court's decision not to allow discovery for abuse of discretion, but, while this is the standard of

11

review for most discovery decisions, that is when those decisions are made on the merits of the discovery requests themselves. In contrast, the District Court never even reached the merits of Musgrave's discovery request because it concluded that it lacked subject-matter jurisdiction, J. App'x 186, which makes that determination subject to *de novo* review.

Date: May 19, 2023

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 19th day of May, 2023, I filed the foregoing with the Court's Electronic Case Filing system, causing a copy to be served via electronic mail to Appellees' counsel of record.

Date: May 19, 2023

Respectfully submitted,

<u>/s/ Kelly B. McClanahan</u>
Kelly B. McClanahan, Esq.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing filing contains 2,761 words, and was

prepared in 14-point Times New Roman font using Microsoft Word 2016.


 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.