# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 13, 2023         Decided June 18, 2024

No. 22-5252

SHAWN MUSGRAVE,
APPELLANT

v.

MARK WARNER, CHAIRMAN AND SENATE SELECT COMMITTEE
ON INTELLIGENCE,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02198)

---

*Kelly B. McClanahan* argued the cause and filed the briefs for appellant.

*Thomas E. Caballero*, Assistant Senate Legal Counsel, Office of Senate Legal Counsel, argued the cause for appellees. With him on the brief were *Morgan J. Frankel*, Senate Legal Counsel, and *Patricia Mack Bryan*, Deputy Senate Legal Counsel.

*Thomas Pulham*, Attorney, U.S. Department of Justice, argued the cause for *amicus curiae* United States in support of appellees. With him on the brief were *Brian M. Boynton*,

Principal Deputy Assistant Attorney General, and *Michael S. Raab*, Attorney.

Before: PILLARD, WILKINS and CHILDS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Shawn Musgrave is a freelance journalist who seeks access to a largely classified congressional committee report on the CIA's use of detention and interrogation in the wake of the September 11, 2001, terrorist attacks. After the committee failed to respond to his request for a copy of the full report, Musgrave filed this lawsuit invoking a common law right of access to the committee report, naming as defendants the committee itself and its chair. The district court dismissed the complaint, holding that the defendants are protected by sovereign immunity, and that the Constitution's Speech or Debate Clause prevents compelled disclosure of the report. It also denied Musgrave's request for discovery about the report's purpose and the Committee's communications with the Executive Branch about the report. Without reaching the question whether sovereign immunity bars Musgrave's asserted common law right of access, we affirm the judgment of the district court on the ground that the Speech or Debate Clause imposes a privilege against Musgrave's requests for discovery and compelled disclosure of the report.

## BACKGROUND

The following allegations are drawn from Musgrave's complaint and matters of which we may take judicial notice. In 2009, the Senate Select Committee on Intelligence (the Committee) initiated a study of the CIA's use of detention and interrogation in the wake of the September 11, 2001, terrorist

attacks. To conduct that study, the Committee needed access to sensitive information held by the Executive Branch, including, for example, "the names of non-supervisory CIA officers, liaison partners, [and] black-site locations." *See* Letter from Chairman Dianne Feinstein and Vice Chairman Christopher S. Bond to CIA Director Leon Panetta at 3 (June 2, 2009) ("Feinstein Letter") (available at United States Amicus Br. Add. 1-5). To that end, the "Committee and officials at the CIA negotiated arrangements to deal with access to classified materials by Senators and their staff, and agreed on rules regarding the Committee's control over its work product." *ACLU v. CIA*, 823 F.3d 655, 658 (D.C. Cir. 2016). As part of those arrangements, the Committee acknowledged that "[a]ny . . . reports" arising out of the review "will carry the highest classification of any of the underlying source materials," and that if the Committee wants to produce an unclassified report for public release, it "will submit that document to CIA . . . for classification review and, if necessary, redaction." Feinstein Letter at 4.

A report summarizing the study's findings was completed in 2014. Many congressional committee reports are made available to the public. *See* Congressional Reports, GovInfo, https://www.govinfo.gov/ app/collection/crpt (last visited June 5, 2024). Pursuant to the agreement with the CIA, however, this report was classified. It is long—6,700 pages, 38,000 footnotes—and highly critical of the CIA's response to 9/11. The Committee shared full copies of the classified report with the President and certain executive agencies. One goal of distributing the report to relevant executive-branch actors was to enable the federal government to learn from bitter experience and "help make sure that the system of detention and interrogation described in th[e] report is never repeated." *See* Report of the Senate Select Committee on Intelligence Study of the Central Intelligence Agency's Detention and

4

Interrogation Program at i ("Unclassified Report"), S. Rep. No. 113-288 (2014), https://perma.cc/UF4U-ZPHG.

The Committee also declassified and released to the public a redacted and abridged version, containing a foreword written by the Committee's then-Chair Senator Dianne Feinstein, an executive summary, findings and conclusions, and minority views. That version of the report runs more than 700 pages and is readily available online. *See* Unclassified Report. Senator Feinstein noted that the report's length meant that declassification review of the full report would have delayed its release, so she opted to release an abridged version of the report with substantial portions—perhaps more than necessary—treated as classified. *Id.* at vi. She advised that "[d]ecisions will be made later on the declassification and release of the full 6,700 page Study." *Id.*

In January 2015, Senator Richard Burr replaced Senator Feinstein as Committee Chair and requested that the President and executive agencies return their copies of the report to the Committee. Most agencies complied with that request. President Barack Obama, however, ordered the report preserved as part of his official presidential records. In addition, U.S. District Judge Royce Lamberth ordered that one copy of the full report be kept by the Department of Defense and another deposited for secure storage with the district court in connection with several habeas corpus petitions related to the treatment of Guantanamo Bay detainees. *See* Compl. ¶ 28 (J.A. 15).

Citing the public's interest in reviewing the full report, a civil liberties organization filed a Freedom of Information Act (FOIA) lawsuit in 2013 to obtain the report from the executive agencies. We held that the report was a congressional record, outside the reach of the disclosure requirements FOIA imposes

5

on the Executive Branch, because the Committee manifested a clear intent to "retain control" of the document. *ACLU*, 823 F.3d at 658, 667. A district court in New York later came to the same conclusion. *Cox v. Dep't of Just.*, No. 17-cv-3329, 2022 WL 21304584, at *5 (E.D.N.Y. Mar. 30, 2022).

Unable to obtain the report from the executive agencies, Musgrave requested a copy directly from the Committee. When the Committee did not respond to that request, Musgrave filed this lawsuit, claiming a common law right of access to the report and invoking the *Larson-Dugan* exception to sovereign immunity. *See Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949); *Dugan v. Rank*, 372 U.S. 609, 620-23 (1963). He named as defendants Senator Mark Warner, who now chairs the Committee, and the Committee itself. He sought an order requiring the defendants "to provide the [report] to him." Compl. at 12 (prayer for relief).

The defendants moved to dismiss the complaint. They argued the district court lacked subject-matter jurisdiction under the doctrine of sovereign immunity and the Speech or Debate Clause. Musgrave cross-moved for partial summary judgment and, in opposing the motion to dismiss, requested discovery about the report's purpose and the Committee's communications with the Executive Branch about the report. He also clarified that he does not seek "the full classified Report." *See* Pl.'s Mem. in Opp'n & Cross-Mot. for Partial Summ. J. at 20, *Musgrave v. Warner*, No. 21-cv-2198 (D.D.C. Mar. 20, 2022), ECF No. 14 (emphases omitted). Rather, his aim was to "compel" the defendants to seek completion of the declassification review previously contemplated by Senator Feinstein, obtain a declassified version of the full report (which does not currently exist), and then "disclose to him the releasable portions of the full Report." *See id.* The district court ruled that it lacked subject-matter jurisdiction under both

6

theories, denied Musgrave's motion for partial summary judgment and request for discovery, and dismissed the complaint. *Musgrave v. Warner*, No. 21-cv-2198, 2022 WL 4245489, at *10 & n.12 (D.D.C. Sept. 15, 2022).

Musgrave timely appealed, and we have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the district court's grant of a motion to dismiss for lack of subject-matter jurisdiction. *Rangel v. Boehner*, 785 F.3d 19, 22 (D.C. Cir. 2015). We review for abuse of discretion a district court's denial of discovery. *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 523 (D.C. Cir. 2019).

## DISCUSSION

On appeal, Musgrave challenges the district court's dismissal of his complaint and denial of his request for discovery.

### A.

Musgrave invokes a common law right of access to the report. "[T]he common law bestows upon the public a right of access to public records and documents." *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996) (citing *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 (1978)). That right extends to "all three branches of government, legislative, executive, and judicial." *Id.* at 903 (quoting *Schwartz v. U.S. Dep't. of Just.*, 435 F. Supp. 1203, 1203 (D.D.C. 1977)); *see also Leopold v. Manger*, 102 F.4th 491 (D.C. Cir. 2024). In practice, the right is "almost always" invoked "in cases involving access to court documents." *Wash. Legal Found.*, 89 F.3d at 902-03. And with respect to documents in the Executive Branch, it has been displaced by FOIA. *See Ctr. for Nat'l Sec. Studs. v. U.S. Dep't of Just.*, 331 F.3d 918, 936 (D.C. Cir. 2003).

7

By contrast, the nature and scope of the common law right of access to documents in the Legislative Branch is relatively undeveloped.  We have not identified, for example, the entities within the Legislative Branch to which the common law right of access extends.  As the government suggested in its briefing in *Schilling v. U.S. House of Representatives*, the right of access may reach entities within the Legislative Branch "other than Congress, including the U.S. Capitol Police, the Government Accountability Office, the Library of Congress, the Architect of the Capitol, and other entities and offices that support Congress," without reaching the Congress itself or its members.  *See* Defendants-Appellees' Brief at 50, *Schilling v. U.S. House of Representatives*, 102 F.4th 503 (D.C. Cir. 2024) (No. 22-5290), 2024 WL 2715998.

We have no need to consider the reach of the common law right of access in this case because, as we explain below, Musgrave's claim cannot overcome the protection afforded by the Speech or Debate Clause.  That said, we note that our analysis would look similar if we began with sovereign immunity.  When evaluating whether a common law right of access claim satisfies the *Larson-Dugan* exception to sovereign immunity, "the question of jurisdiction merges with the question on the merits."  *Leopold*, 2024 WL 2713596, at *5 (quoting *Wash. Legal Found.*, 89 F.3d at 902).  And, to prevail on the merits, Musgrave would have to show, among other things, that the Speech or Debate Clause does not independently bar his claim.  Even if we began with sovereign immunity, then, Musgrave's claim would founder at the same place: the Speech or Debate Clause.  Heeding the general wisdom of deciding cases narrowly, we proceed directly to that point.

8

**1.**

The Speech or Debate Clause provides that, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. "The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975). It does so by guarding against "intrusion by the Executive and the Judiciary into the sphere of protected legislative activities." *United States v. Helstoski*, 442 U.S. 477, 491 (1979). In service of those ends, the Clause provides "a somewhat complicated privilege, with several strands." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995).

Two strands of its protection are relevant here. First, "when the actions upon which a plaintiff seeks to predicate liability are legislative acts," the Speech or Debate Clause "operates as a jurisdictional bar," conferring absolute immunity from suit. *Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 940 (D.C. Cir. 2013) (formatting modified) (quoting *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006) (en banc) (plurality op.)). For example, the Speech or Debate Clause immunized members of Congress from civil litigation that sought to predicate liability on the public issuance of a committee report that included allegedly private, defamatory material. *See Doe v. McMillan*, 412 U.S. 306, 312 (1973).

Second, even when a plaintiff does not base her claim on a legislative act, the Clause offers "evidentiary and testimonial privileges [that] shield Members against certain forms of questioning," without "depriv[ing] the court of jurisdiction." *Massie v. Pelosi*, 72 F.4th 319, 321 n.1 (D.C. Cir. 2023); *see,*

9

*e.g.*, *United States v. Brewster*, 408 U.S. 501, 512 (1972) ("[A] Member of Congress may be prosecuted under a criminal statute provided that the Government's case does not rely on legislative acts or the motivation for legislative acts."). Thus, the immunity strand operates as a jurisdictional bar, whereas the privilege strand does not deprive the court of jurisdiction.

Our circuit "recognizes that one aspect of the testimonial privilege is a limited protection against the compelled disclosure of documents"—in other words, a nondisclosure privilege. *In re Sealed Case*, 80 F.4th 355, 365 (D.C. Cir. 2023). For example, we have permitted members to invoke the Speech or Debate Clause to quash subpoenas calling for legislative documents. *See In re Grand Jury Subpoenas*, 571 F.3d 1200, 1200-01 (D.C. Cir. 2009); *Brown & Williamson*, 62 F.3d at 423; *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 863 (D.C. Cir. 1988). Members have likewise relied on the Clause to prevent disclosure and force the return of legislative documents seized pursuant to a search warrant. *See In re Sealed Case*, 80 F.4th at 372; *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 656 (D.C. Cir. 2007).

Musgrave's asserted right of access to the Committee's report could in theory implicate both the immunity and nondisclosure strands of the privilege. Musgrave's complaint seeks to predicate liability on the defendants' failure to provide him with a full copy of the report. Musgrave has since clarified, however, that his claim is that the defendants have ignored their duty to seek further declassification of the report. His logic seems to be that, in failing to do so, the defendants violated the common law right of access. So, if Senator Warner's refusal to seek further declassification of the report were itself a legislative act, the Speech or Debate Clause would immunize him from this suit and thereby deprive the district court of jurisdiction to consider the claim.

10

We need not decide whether Musgrave's claim seeks to base liability on a legislative act within the scope of the Speech or Debate Clause. Musgrave's complaint must be dismissed because, even assuming a claim seeking to trigger a full declassification review of the report were not entirely barred, the nondisclosure privilege of the Speech or Debate Clause would preclude us from compelling the defendants to release the resultant less-redacted report. Because the Speech or Debate Clause's nondisclosure privilege bars the relief Musgrave seeks, it is a "threshold ground[] for denying audience to a case on the merits" that we have the "leeway" of deciding before jurisdictional issues, such as sovereign immunity or immunity under the Speech or Debate Clause. *Sinochem Int'l. Co. Ltd. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 431 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 100-101 n.3 (1998); and *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).

**2.**

We turn, therefore, to the defendants' assertion that the report is what we refer to as a legislative document. A document in Congress' possession is a legislative document—and therefore may not be "reached either in a direct suit or a subpoena"—so long as the document "comes into the hands of congress[members]" by way of "'legislative acts' or the legitimate legislative sphere." *Brown & Williamson*, 62 F.3d at 421; *see MINPECO*, 844 F.2d at 863 (a legislative document is one that is "the product of activities within the legislative sphere"); *see also In re Sealed Case*, 80 F.4th at 365 (a legislative document is one that contains "evidence" of legislative acts).

The paradigmatic legislative act "is speech or debate in either House." *Gravel v. United States*, 408 U.S. 606, 625

11

(1972). "Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id.* To that end, we have held that "legislative acts" include "acts of voting, conduct at committee hearings, preparation of committee reports, authorization of committee publications and their internal distribution, and issuance of subpoenas concerning a subject on which legislation could be had." *McSurely v. McClellan*, 553 F.2d 1277, 1284-85 (D.C. Cir. 1976) (en banc) (internal quotation marks omitted). A member of Congress would therefore enjoy absolute immunity from any suit that seeks to hold the member liable based on one of those acts.

By the same token, we have held that the Speech or Debate Clause precludes the compelled disclosure of congressional committee subpoenas, *Jud. Watch, Inc.*, 998 F.3d at 992, and the transcript of a statement made during a subcommittee hearing, *MINPECO*, 844 F.2d at 858, 860. In both cases we explained that, because the activities leading to the documents' creation were legislative acts, the documents themselves were legislative documents and thus protected by the Speech or Debate Clause from compelled disclosure. *See Jud. Watch, Inc.*, 998 F.3d at 992 ("Here, the Committee's issuance of subpoenas, whether as part of an oversight investigation or impeachment inquiry, was a legislative act protected by the Speech or Debate Clause."); *MINPECO*, 844 F.2d at 861 ("As the preparation of the statement for publication in the subcommittee report was part of the legislative process, that is the end of the matter.").

12

The same logic applies to committee reports. Congress has the power to investigate any subject "on which legislation could be had." *Eastland*, 421 U.S. at 504 n.15 (quoting *McGrain v. Daughtery*, 273 U.S. 135, 177 (1927)); *see also Trump v. Mazars USA, LLP*, 591 U.S. 848, 863 (2020) (same). That investigatory power "is inherent in the power to make laws." *Eastland*, 421 U.S. at 504. After all, "a legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change." *Id.* Thus, "[a]n investigation authorized by the House and within [a committee's] jurisdiction is an exercise of congressional power and by definition part of a legislative proceeding." *In re Sealed Case*, 80 F.4th at 369.

A committee report is an outcome of a committee investigation. That is why, so long as the underlying investigation is authorized and within the committee's jurisdiction, the "preparation of committee reports" is a protected legislative act. *McSurely*, 553 F.2d at 1284 (citing *Doe*, 412 U.S. at 311-13, 317-18). And, by the same token, the committee report itself is a privileged legislative document.

Musgrave does not dispute that the Committee's investigation was both authorized and within the Committee's jurisdiction. The Senate established the Committee "to oversee and make continuing studies of the intelligence activities and programs of the United States Government, and to submit to the Senate appropriate proposals for legislation and report to the Senate concerning such intelligence activities and programs." S. Res. 400, 94th Cong., 2d Sess. (1976), § 1. The Senate charged the Committee with the responsibility "to provide vigilant legislative oversight over the intelligence activities of the United States to assure that such activities are in conformity with the Constitution and laws of the United

13

States." *Id.* To that end, the Senate authorized the Committee to "make investigations into any matter within its jurisdiction," *id.* § 5(a)(1), and bring "to the attention of the Senate . . . any matters requiring the attention of the Senate," *id.* § 4(a).

Pursuant to that authority, the Committee "conduct[ed] a comprehensive review of the program of detention and interrogation formerly run by the [CIA]." *ACLU*, 823 F.3d at 658. After completing that investigation, the Committee prepared the report. Because the report "emanat[ed] from [the Committee's] oversight investigation of the CIA," *id.* at 665—a legislative act—it is a legislative document privileged under the Speech or Debate Clause. The Clause thus "bars this court from ordering a congressional committee" to disclose the report. *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1086 (D.C. Cir. 2017).

Musgrave concedes that committee reports are generally legislative documents. He nevertheless contends that the report at issue here is not a legislative document because its "stated purpose was not to aid legislative deliberation, but to create a record for the Executive Branch and the public." Appellant Br. 19 (formatting modified). Put differently, Musgrave complains that the report is not a "deliberative document" but an "end[] unto [it]sel[f]" and, as a result, not privileged under the Speech or Debate Clause. *Id.* at 16.

The Speech or Debate Clause's nondisclosure privilege is not limited to deliberative documents. As discussed, it protects any document that "comes into the hands of congress[members]" by way of "'legislative acts' or the legitimate legislative sphere." *Brown & Williamson*, 62 F.3d at 421. That includes a document—like a subpoena or a committee report—that may be a result of congressional deliberation but does not itself reflect such deliberation. In

14

suggesting otherwise, Musgrave seemingly conflates the Speech or Debate Clause's nondisclosure privilege with the executive deliberative process privilege, which more narrowly "shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).

In any event, the report is a deliberative document. As the defendants point out, the Committee conducted the investigation and wrote the report in part to help decide whether legislation was needed. Appellee Br. 22-23. That is itself an important step in the legislative process. *See Eastland*, 421 U.S. at 509 ("To be a valid legislative inquiry there need be no predictable end result."). Senator Feinstein explained in the report's public foreword that the investigation's purpose was to review the CIA's program "and to shape detention and interrogation policies in the future." Unclassified Report at vi. She then emphasized that changes should be "enshrined in legislation." *Id.* at vii. Within a year of the Committee's submission of the report to the Senate, the Senate enacted legislation limiting interrogation techniques that may lawfully be used on detainees. *See* National Defense Authorization Act for FY 2016, Pub. L. No. 114-92, § 1045, 129 Stat. 726, 977-79 (2015). And members of Congress invoked the report's findings in urging passage of the bill. *See, e.g.*, 161 Cong. Rec. S4176 (daily ed. June 16, 2015) (statement of Sen. Patrick Leahy). So, the report played an integral role in the legislative process.

Musgrave also questions the subjective purpose of the Committee in creating the report. Appellant Br. 16. He insists that, even if the report did play a role in the legislative process,

15

the Committee "never intended" that to happen. *Id.* In assessing whether the Committee's investigation is a "legislative act[]," however, "we do not look to the motives alleged to have prompted it." *Eastland*, 421 U.S. at 508. In *Eastland*, for example, the plaintiffs sought to enjoin the issuance of a congressional subpoena demanding their organization's membership list. 421 U.S. at 508. They argued that the "sole purpose" of the investigation was to force the "public disclosure of beliefs, opinions, expressions and associations of private citizens which may be unorthodox or unpopular"—not, in other words, to aid legislative work. *Id.* The Court rejected that argument because "the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *Id.* (quoting *Brewster*, 408 U.S. at 525 (emphasis omitted)). Regardless of the investigation's purpose, then, the resulting report is protected from disclosure by the Speech or Debate Clause.

Finally, Musgrave's complaint suggests that, even if the Speech or Debate Clause applies, it "may not be categorically invoked to preclude any request for . . . a public record" under the common law right of access. Compl. ¶ 14 (J.A. 10). On this view, we must weigh "the Government's interest in keeping the document secret . . . against the public's interest in disclosure." *Id.* For support, Musgrave invokes the concurring opinion in *Judicial Watch*, which suggests that "the application of the Speech or Debate Clause to a common law right of access claim would require careful balancing." 998 F.3d at 993 (Henderson, J., concurring). But Musgrave explicitly abandons that argument on appeal, insisting that he is not "challenging" the "'absolute' nature of the Speech or Debate Clause." Appellant Br. 13. He asserts only that the report is not "covered by the Speech or Debate Clause in the first place."

16

*Id.* We therefore need not conduct any balancing nor consider whether balancing would be appropriate.

\* \* \*

In sum, we conclude that the report is a legislative document, and that the Speech or Debate Clause therefore protects it from compelled disclosure. The district court correctly dismissed the complaint, and we affirm that judgment.

**B.**

Musgrave also appeals the district court's denial of his request for discovery relating to whether the report is subject to the Speech or Debate Clause's nondisclosure privilege. The district court held that its "lack of subject-matter jurisdiction over this suit also bars plaintiff's request for limited discovery in lieu of dismissal." *Musgrave*, 2022 WL 4245489, at \*10 & n.12. We explained above our decision to affirm the district court's dismissal based on the alternative threshold ground that the report was privileged under the Speech or Debate Clause, rather than the jurisdictional ground that the defendants were immune either under the Speech or Debate Clause or the doctrine of sovereign immunity. But regardless whether the Speech or Debate Clause imposes a jurisdictional bar in this case, a district court does not need jurisdiction to permit jurisdictional discovery. *See Lewis v. Mutond*, 62 F.4th 587, 596 (D.C. Cir. 2023). For that reason, the district court should not have denied discovery without determining either that the discovery was itself precluded by the Speech or Debate Clause, or that "no facts that additional discovery could produce would

17

affect" the Speech-or-Debate Clause analysis. *Id.* at 595 (formatting modified).

We nonetheless affirm the denial of discovery because the error was not an abuse of discretion. A district court abuses its discretion when it commits a "material error of law." *In re White*, 64 F.4th 302, 312 (D.C. Cir. 2023). Musgrave argues that, because the district court categorically refused to consider the discovery request, we should review the denial *de novo*, rather than for abuse of discretion. Reply Br. 11-12. But he offers no support for departing here from the abuse-of-discretion review ordinarily applicable to district court discovery orders. *See Haynes*, 924 F.3d at 523.

Reviewing for abuse of discretion, we conclude that the district court's error was not material. Musgrave seeks discovery "about the purpose of the [report] and the exchanges [the Committee] had with the Executive Branch about it." Appellant Br. 24-25. He proposes "the use of interrogatories, documents requests, and requests for admissions," in addition to "targeted depositions of individuals who can speak with personal knowledge." *Id.* at 25. The report is a legislative document, and the Speech or Debate Clause "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *Eastland*, 421 U.S. at 508. As we discussed, the creation of the report was a legislative act protected regardless of its purpose, and Musgrave does not specify how any communications he seeks between the Committee and the Executive Branch could bolster his argument to the contrary. Because Musgrave has not shown that any requested discovery could produce information that would affect the Speech-or-Debate analysis, there is no basis for remand to allow it.

18

## CONCLUSION

For the foregoing reasons, the judgment is affirmed.

*So ordered.*