No. 22-5252

[ORAL ARGUMENT NOT YET SCHEDULED]

**UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT**

_____

SHAWN MUSGRAVE,

*Plaintiff-Appellant*,

v.

MARK WARNER, *et al.*,

*Defendant-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
No. 1:21-cv-02198 (Beryl A. Howell, C.J.)

_____

**BRIEF FOR PLAINTIFF-APPELLANT**
_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellant*

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Appellant Shawn Musgrave, by and through undersigned counsel, certifies the following:

### I.      Parties and Amici

The parties to this case are the Appellant Shawn Musgrave and the Appellees Mark Warner and the Senate Select Committee on Intelligence. There are no *amici curiae* so far.

### II.      Rulings Under Review

Appellant seeks review of the Order issued by the District Court on 15 September 2022 (Howell, C.J.).

### III.      Related Cases

This case was not previously before this Circuit or any other court. There are currently no pending related cases.

Date: March 4, 2023

Respectfully submitted,

  /s/ Kelly B. McClanahan  
Kelly B. McClanahan, Esq.

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES.....i

TABLE OF CONTENTS..................................................................ii

TABLE OF AUTHORITIES ........................................................iv

GLOSSARY ....................................................................................vi

JURISDICTIONAL STATEMENT ...............................................1

STATEMENT OF ISSUES............................................................1

STATEMENT OF THE CASE .......................................................2

STATEMENT OF FACTS .............................................................3

    *The Run-Up to Report Publication*...............................................3

    *Renewed Secrecy after Report Publication* .................................8

    *Musgrave's Request and This Case*............................................11

SUMMARY OF ARGUMENT .....................................................11

ARGUMENT ...............................................................................12

    I.     STANDARD OF REVIEW ..........................................12

    II.    THE DISTRICT COURT ERRED BY HOLDING THAT THE REPORT WAS COVERED BY THE SPEECH OR DEBATE CLAUSE ................................................................12

    III.   THE DISTRICT COURT ERRED BY HOLDING THAT THE REPORT WAS NOT A PUBLIC RECORD...............................20

    IV.   COROLLARY ISSUES.................................................22

CONCLUSION ...........................................................................25

CERTIFICATE OF SERVICE........................................................................26

CERTIFICATE OF COMPLIANCE ............................................................27

# <u>TABLE OF AUTHORITIES</u>

**Cases:**                                                                **Pages**

*ACLU v. CIA*, 105 F. Supp. 3d 35 (D.D.C. 2015)............................................10

*ACLU v. CIA*, 823 F.3d 655 (D.C. Cir. 2016)..................................................10

*Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) ..................................................................................20

*Doe v. McMillan*, 412 U.S. 306 (1973) ...........................................................14

*DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749 (1989) .............13

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975)............................18, 20

*EPA v. Mink*, 410 U.S. 73 (1973)....................................................................13

*Gravel v. United States*, 408 U.S. 606 (1972) ............................................14, 15, 16

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) ................................................13

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007).....................................................23

*Judicial Watch, Inc. v. Schiff*, 998 F.3d 989 (D.C. Cir. 2021).........................13

*Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453 (5th Cir. 2005) ...................6

*Kregler v. City of N.Y.*, 608 F. Supp. 2d 465 (S.D.N.Y. 2009) ........................23, 24

*Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015)............................................12

*Rivera-Gomez v. de Castro*, 900 F.2d 1 (1st Cir. 1990)...................................24

*United States v. Doe*, 455 F.2d 753 (1st Cir. 1972) ..........................................15

*United States v. Mitchell*, 551 F.2d 1252 (D.C. Cir. 1976)..............................12

iv

*Wash. Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897 (D.C. Cir. 1996) ..21

**Statutes and Rules:**

28 U.S.C. § 1331 ...........................................................................1

28 U.S.C. § 1361 ...........................................................................1

Fed. R. Civ. P. 12 ........................................................................23

Fed. R. Civ. P. 26 ........................................................................23

U.S. Const. art. I, § 6, cl. 1 ........................................................12

**Legislative History:**

SSCI, S. Rept. 113-288 ..............................................................3, 4, 5, 6, 16, 17, 18

## <u>GLOSSARY</u>

| | |
|---|---|
| CIA | Central Intelligence Agency |
| DOD | Department of Defense |
| JA | Joint Appendix |
| Musgrave | Appellant Shawn Musgrave |
| SSCI | Senate Select Committee on Intelligence |
| Torture Report | Senate Report 113-288, *Report of the Senate Select Committee on Intelligence: Committee Study of the Central Intelligence Agency's Detention and Interrogation Program* |

## JURISDICTIONAL STATEMENT

Appellant Shawn Musgrave ("Musgrave") invoked the District Court's jurisdiction against Appellees Mark Warner and the United States Senate Select Committee on Intelligence (collectively "SSCI" or "the Committee") under the common law right of access to public records, the Federal Declaratory Judgment Act, the All Writs Act, 28 U.S.C. § 1331, and 28 U.S.C. § 1361, regarding a request for disclosure of Senate Report 113-288, *Report of the Senate Select Committee on Intelligence: Committee Study of the Central Intelligence Agency's Detention and Interrogation Program* ("the Torture Report" or "the Report"). Joint App'x at 12 [hereinafter "JA"].

On 15 September 2022, the Honorable Beryl A. Howell ("the District Court") issued a Final Order dismissing the case. *Id.* at 166. Musgrave noticed an appeal against SSCI on 20 September 2022. *Id.* at 188.

## STATEMENT OF ISSUES

1.      Whether the District Court erred as a matter of law in concluding that the Court lacked subject matter jurisdiction over the case?

2.      Whether the District Court erred as a matter of fact and law in concluding that the Torture Report was covered by the Speech or Debate Clause of the U.S. Constitution?

3.      Whether the District Court erred as a matter of fact and law in concluding that the Report was not a public record?

4.      Whether the District Court erred as a matter of fact and law in concluding that Appellees' interest in secrecy outweighed the public's interest in disclosure?

5.      Whether the District Court erred as a matter of law in concluding that Musgrave's request for a sanitized version of the Report—in which all classified information which had not been previously officially disclosed would be redacted—was moot?

6.      Whether the District Court erred as a matter of law in concluding that Musgrave's request for limited discovery in lieu of dismissal was barred.

## STATEMENT OF THE CASE

Musgrave brought this case against SSCI after it failed to release a copy of the Report in response to the request he submitted pursuant to the common law right of public access to inspect and copy public records and documents.

While the District Court definitively rejected SSCI's sovereign immunity arguments, thereby making them irrelevant to this appeal, the District Court still held that the Report was protected by the Speech or Debate Clause of the U.S. Constitution and was not a public record as defined by the common law. It also

made some corollary determinations which will be discussed herein, but those are the two chief controversies in this case.

Musgrave timely appealed the District Court's Judgment.

## STATEMENT OF FACTS

This case will benefit from a more detailed recitation of the relevant facts than is customary for a brief of this nature, in order to provide important context both for Musgrave's request and for his arguments herein.

*The Run-Up to Report Publication:*

After initially conducting a targeted investigation into the destruction of videotapes of Central Intelligence Agency ("CIA") interrogations during 2007-09, SSCI determined "that a broader study of the CIA's detention and interrogation program at large was needed." *Musgrave v. Warner*, No. 21-2198, 2022 U.S. Dist. LEXIS 166365, at *2 (D.D.C. Sept. 15, 2022) [hereinafter *Musgrave I*]. On 5 March 2009, SSCI "approved a study into the CIA's former program of detention and interrogation techniques with instructions that this examination be used 'as broadly as appropriate to help make sure that this experience is never repeated.'" *Id.* at *3 (quoting SSCI, S. Rept. 113-288 at 8, *available at* https://www.govinfo.gov/content/pkg/CRPT-113srpt288/pdf/CRPT-

113srpt288.pdf (last accessed Mar. 3, 2023)).[1] The report of this study was the

Torture Report, which was more than 6,700 pages long with approximately 38,000

footnotes. *Musgrave I* at *3. SSCI approved the final report on 13 December 2012,

and copies were sent to "the President and appropriate parts of the Executive

Branch" for comments in early 2013. S. Rept. 113-288 at viii. After CIA responded

"with extensive comments," SSCI incorporated suggested edits or comments "as

appropriate" and ordered the Report to be printed on 9 December 2014. *Id.* At the

same time, after coordinating declassification review with elements of the

Executive Branch, SSCI released a redacted and heavily abridged version—

containing a foreword written by then-SSCI Chair Dianne Feinstein, an Executive

Summary, Findings and Conclusions, and Additional and Minority Views, and

totaling about seven hundred pages. *Musgrave I* at *3.

Sen. Feinstein's foreword summarized the full Report's contents: "CIA

personnel, aided by two outside contractors, decided to initiate a program of

indefinite secret detention and the use of brutal interrogation techniques in

violation of U.S. law, treaty obligations, and our values. This Committee Study

documents the abuses and countless mistakes made between late 2001 and early

2009." S. Rept. 113-288 at v. SSCI "did not make specific recommendations,"

---

[1] This is the publicly released, redacted version of the Executive Summary and selected other portions of the Report.

while Sen. Feinstein observed that CIA had "already made and begun to implement its own recommendations," while she "intend[ed] to work with Senate colleagues to produce recommendations and to solicit views from the readers of the [Report]." *Id.* at 7.

Sen. Feinstein noted that, although "[t]he Executive Summary of the Study provides a significant amount of new information . . . to what has already been made public by the Bush and Obama Administrations, as well as non-governmental organizations and the press," the full Report is "more than ten times the length of the Executive Summary and includes comprehensive and excruciating detail," the Report "describes the history of the CIA's Detention and Interrogation program from its inception to its termination, including a review of each of the 119 known individuals who were held in CIA custody." *Id.* at v-vi. She added that the full Report "also provides substantially more detail than what is included in the Executive Summary on the CIA's justification and defense of its interrogation program on the basis that it was necessary and critical to the disruption of specific terrorist plots and the capture of specific terrorists." *Id.* at vi. Although the Executive Summary "provides sufficient detail to demonstrate the inaccuracies of each of [CIA's] claims, the information in the full Committee Study [i.e., the full Report] is far more extensive." *Id.*

SSCI chose not to seek declassification of the full Torture Report when it was released in part because doing so for the "more than six thousand page report would have significantly delayed the release of the Executive Summary. Decisions will be made later on the declassification and release of the full 6,700 page Study." *Id.* As of this writing, Sen. Feinstein's Senate website states, "Senator Feinstein is committed to keeping the report's executive summary in the public eye as well as the full declassification of the entire report." "Intelligence Committee," *at* https://www.feinstein.senate.gov/public/index.cfm/the-intelligence-committee (last accessed Mar. 3, 2023).[2]

At the time it released the redacted Report, SSCI intended that "[t]his and future Administrations should use this Study to guide future programs, correct past mistakes, increase oversight of CIA representations to policymakers, and ensure coercive interrogation practices are not used by our government again." S. Rept. 113-288 at viii. It distributed copies of the full Report to White House, the Director of National Intelligence, the Director of the CIA, the Attorney General, the Secretary of Defense, the Secretary of State, the Director of the Federal Bureau of Intelligence, and the CIA Inspector General, without any restrictions on their use

---

[2] This Court should take judicial notice of this and other cited documents available on official government websites. *See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of information available on federal agency website).

or dissemination. Letter from Feinstein to Obama of 12/10/14 at 2 [hereinafter 1st Feinstein-Obama Ltr.], *available at*

https://www.feinstein.senate.gov/public/_cache/files/b/e/be9d4494-383c-44c2-97ba-085033357ab6/FD5957E288184512C22015210EC336DA.letter-to-potus-transmitting-the-full-and-final-ssci-study.pdf (last accessed Mar. 3, 2023).

In addition to copying those officials on the letter and transmission, Sen. Feinstein wrote to President Obama that to "ensure that such a program will not be contemplated by the United States ever again," and to "strengthen our resolve against torture . . . the full report should be made available within the CIA and other components of the Executive Branch for use as broadly as appropriate to help make sure that this experience is never repeated." *Id.* at 1. "To achieve that result," she added, "I hope you will encourage use of the full report in the future development of CIA training programs, as well as future guidelines and procedures for all Executive Branch employees." *Id.* Sen. Feinstein reiterated that this had been SSCI's intention roughly three years later in a confirmation hearing for Christopher Sharpley to be CIA Inspector General, stating, "The point of distributing [the report] to the departments was in the hope that they would read it, not look at it as some poison document, and learn from it." Scott Roehm, *Congress is Facing Decisions on Torture, and Needs to Treat Them As Such*, Just Security (Nov. 10, 2017) (alterations in original), *at*

https://www.justsecurity.org/46924/congress-facing-decisions-torture-treat/ (last

accessed Mar. 3, 2023).

*Renewed Secrecy after Report Publication:*

27.     In January 2015, about a month after Sen. Feinstein and SSCI

transmitted the Torture Report to the Senate and to the Executive Branch officials

noted above, Senator Richard Burr became Chairman of SSCI after the Republican

Party became the majority party. In one of his first moves as SSCI chair, on 14

January 2015, he called for the White House and all agencies in the Executive

Branch with copies of the full Torture Report to return them to SSCI, claiming they

were "Committee-sensitive." *See*, *e.g.*, Jason Leopold, *GOP Senator Wants to*

*Make Sure the Full CIA Torture Report Never Sees the Light of Day*, VICE News

(Jan. 21, 2015), at https://www.vice.com/en/article/a38mba/gop-senator-wants-to-

make-sure-the-full-cia-torture-report-never-sees-the-light-of-day (last accessed

Mar. 3, 2023).

In response to Sen. Burr's attempt to claw back the Torture Report, Sen.

Feinstein sent another letter to President Obama on 16 January 2015, continuing to

urge that the Report be read widely by cleared Executive Branch officials so the

history of CIA's torture program is not forgotten and so "appropriate lessons can

be learned from it." Letter from Feinstein to Obama of 1/16/15 at 2 [hereinafter 2d

Feinstein-Obama Ltr.], *available at*

https://s3.amazonaws.com/s3.documentcloud.org/documents/1507936/feinstein-jan-16-letter-to-obama-in-response-to.pdf (last accessed Mar. 3, 2023). Of particular relevance to this case, Sen. Feinstein reiterated in this letter that "there was never any objection to providing the full, official report to the Executive Branch, consistent with appropriate limitations due to classification," and stated that realizing "the purpose of the Committee's report . . . depends in part on future Executive Branch decisionmakers having and utilizing a comprehensive record of this program, in far more detail than what we were able to provide in the now declassified and released Executive Summary." *Id.* at 1.

Sen. Burr's request was not entirely successful for several reasons. First, the White House did not comply with Sen. Burr's request—President Obama instead ordered that the Report be preserved under the Presidential Records Act as part of his official presidential records. *See*, *e.g.*, Josh Gerstein, *Obama Won't Declassify Senate 'Torture Report' Now, But Will Preserve It*, POLITICO (Dec. 12, 2016), at https://www.politico.com/blogs/under-the-radar/2016/12/barack-obama-torture-report-declassify-preserve-232519 (last accessed Mar. 3, 2023). Second, and also in December 2016, Judge Royce Lamberth ordered that a full copy of the Report be both kept by the Department of Defense ("DOD") and deposited with the court for secure storage as part of several habeas corpus cases related to Guantanamo Bay detainees.

Sen. Burr's request was otherwise largely successful, however. Several agency declarations were submitted to the D.C. District Court on 21 January 2015 as part of a Freedom of Information Act lawsuit over the Report. In that case, the Government asserted that "[n]either [the Department of Justice] nor [the Department of State] . . . has even opened the package with the disc containing the full Report," and "CIA and DOD have carefully limited access to and made only very limited use of the Report." Gov't Mem. Supp. Mot. Dismiss, Dkt. #39, at 24 (filed Jan. 21, 2015), *ACLU v. CIA*, No. 13-1870 (D.D.C.). "Each agency has ensured that the envelope containing the disc is marked with the appropriate classification marking, stored in a secure location . . . and labeled as a 'congressional record.'" *Id.* The district court held that the Torture Report was not an agency record and dismissed that case, and this Court affirmed that decision. *ACLU v. CIA*, 105 F. Supp. 3d 35 (D.D.C. 2015), *aff'd*, 823 F.3d 655 (D.C. Cir. 2016).

In the summer of 2017, the Trump Administration returned the White House's copies of the Torture Report to Sen. Burr and SSCI. *See*, *e.g.*, Mark Mazzetti, Matthew Rosenberg, & Charlie Savage, *Trump Administration Returns Copies of Report on C.I.A. Torture to Congress*, N.Y. Times (June 2, 2017), *at* https://www.nytimes.com/2017/06/02/us/politics/cia-torture-report-trump.html (last accessed Mar. 3, 2023).

*Musgrave's Request and This Case:*

On 4 June 2021, Musgrave requested that SSCI release a copy of the Report to him pursuant to the common law right of access to public records. JA at 18. On 18 August 2021, having received no response to this request, Musgrave filed this case in the District Court, arguing that "Musgrave has a legal right under the common law right of access to public records to obtain the Torture Report because it is a 'public record' within the relevant framework, it does not implicate the Speech or Debate Clause rights of any individual Member of Congress or Committee to a meaningful extent, and SSCI's interest in keeping it secret is outweighed by the uniquely significant public interest in disclosure of the full Report." *Id.* On 19 October 2021, SSCI filed a motion to dismiss, *id.* at 3, and Musgrave filed a cross-motion for partial summary judgment on 20 March 2022. *Id.* at 5. The District Court granted SSCI's motion and denied Musgrave's cross-motion on 15 September 2022, *id.* at 166, and Musgrave noticed this appeal on 20 September 2022. *Id.* at 188.

## SUMMARY OF ARGUMENT

The District Court erred by concluding that the Torture Report was covered by the Speech or Debate Clause of the U.S. Constitution and that it was not a public record. The District Court also erred by concluding that SSCI's interest in secrecy outweighed the public's interest in disclosure, that Musgrave's request for

a sanitized version of the Report was moot, and that Musgrave's request for limited discovery was also barred by the Speech or Debate Clause. The Court should reverse this case.

## ARGUMENT

Musgrave seeks a reversal of the District Court's rulings identified above.

## I.    STANDARD OF REVIEW

This Court reviews the District Court's dismissal based on lack of subject matter jurisdiction and Speech or Debate immunity *de novo*. *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015).

## II.    THE DISTRICT COURT ERRED BY HOLDING THAT THE REPORT WAS COVERED BY THE SPEECH OR DEBATE CLAUSE

The core dispute of this litigation is effectively over the question of whether Committee reports are inherently protected by the Speech or Debate Clause of the Constitution, U.S. Const. art. I, § 6, cl. 1. Judge Henderson's concluding remarks in her concurrence in this Court's opinion in *Judicial Watch, Inc. v. Schiff* succinctly explain the cost of ruling in SSCI's favor:

> Nevertheless, the fundamental importance of the common law right of access to a democratic state—a right "predat[ing] the Constitution itself"—cautions against the categorical extension of Speech or Debate Clause immunity to the right. *Mitchell*, 551 F.2d at 1260. Simply put, the Speech or Debate Clause should not bar disclosure of public records subject to the common law right of access in all circumstances. Instead, the Clause should be considered in weighing the interests for and against disclosure as part of the second-step balancing test. "The generation that made the nation thought secrecy in government one of

12

> the instruments of Old World tyranny and committed itself to the principle that a democracy cannot function unless the people are permitted to know what their government is up to." *Reps. Comm. for Freedom of the Press*, 489 U.S. at 772-73 (emphasis in original) (quoting *EPA v. Mink*, 410 U.S. 73, 105, 93 S. Ct. 827, 35 L. Ed. 2d 119 (1973) (Douglas, J., dissenting)).

998 F.3d 989, 999 (D.C. Cir. 2021) (Henderson, J., concurring). Because the plaintiff-appellants in that case did not fully argue this point, this Court did not adjudicate it, leading to the uncertain posture in this case.

The main question before the Court in this section is whether it agrees or disagrees with Judge Henderson's second sentence quoted above: "Simply put, the Speech or Debate Clause should not bar disclosure of public records subject to the common law right of access *in all circumstances*." *Id.* (emphasis added). However, despite the District Court's focus on the "absolute" nature of the Speech or Debate Clause privilege, *Musgrave I* at *8, the Court need not concern itself with that particular straw man, because Musgrave is not challenging the assertion. Whether the Speech or Debate Clause conveys an absolute or qualified privilege once its protection attaches is beyond the scope of this argument, because Committee reports are not all inherently covered by the Speech or Debate Clause in the first place.

As an initial matter, Musgrave concedes—as he must—that the Supreme Court has found Committee reports to be within the protection of the Speech or Debate Clause. *See*, *e.g.*, *Hutchinson v. Proxmire*, 443 U.S. 111, 124-25 (1979);

*Gravel v. United States*, 408 U.S. 606, 624 (1972). However, the context for those cases paints a significantly different picture than the instant case, ultimately providing more support for Musgrave's case than for SSCI's.

Simply put, those cases—as well as the related case *Doe v. McMillan*, 412 U.S. 306 (1973)—only discussed Committee reports as the medium in which an objectionable statement was recorded. They stood for the simple principle that defaming a person in a Committee report was no different than defaming a person in a floor speech as far as liability was concerned. They did not stand for the principle for which SSCI cites them in this case, to say that a house of Congress cannot be compelled to release a Committee report if it would be considered a public record according to the common law right of access. In fact, as noted above, Judge Lamberth ordered a copy of the Torture Report to be deposited with the District Court in connection with pending Guantanamo Bay litigation, which he would not have been able to do if the Speech or Debate Clause prevented Congress from being forced to release a Committee report to an entity to which it had not consented to release it, with no exceptions.

Whether or not a particular Committee report is protected from compelled disclosure by the Speech or Debate Clause, therefore, is a fact-dependent inquiry. In *Gravel*, the Court explained, in the context of republication, that the republication "was in no way essential to the deliberations of the Senate; nor does

questioning as to private publication threaten the integrity or independence of the Senate by impermissibly exposing its deliberations to executive influence." 408 U.S. at 625. Filtering the instant controversy through the *Gravel* filter, Speech or Debate Clause immunity is triggered when: (1) the information is essential to Congressional deliberations; and (2) revealing the information would threaten Congressional integrity or independence by impermissibly exposing its deliberations to Executive influence. This framework is bolstered by the Court's explanation that "the courts have extended the privilege to matters beyond pure speech or debate in either House, but 'only when necessary to prevent indirect impairment of such deliberations.'" *Id.* (quoting *United States v. Doe*, 455 F.2d 753, 760 (1st Cir. 1972)).

The District Court rejects the "*Gravel* filter"—a term admittedly coined by the undersigned—as "a fiction," but in doing so it effectively makes Musgrave's point for him. *Musgrave I* at *11 n.4. As the District Court noted, "[t]he Supreme Court in *Gravel* held that the Clause did not protect U.S. Senator Gravel from liability because the act in question was not deliberative and thus 'not part and parcel of the legislative process.'" *Id.* (quoting 408 U.S. at 626.) In other words, if the act *is not deliberative*, then it is "not part and parcel of the legislative process." That *is* the "*Gravel* filter," and that is the key failing of this case. As Musgrave has

shown, the Torture Report *was not deliberative*. Therefore, it is not covered by the Speech or Debate Clause.

While many—if not most—Committee reports are deliberative in nature, some are not. Some Committee reports are in effect ends unto themselves, where the writing of the report describing what was learned during the investigation is the end goal. This is especially true when copies of the reports are disseminated to the Executive Branch, since further dissemination could hardly "expose [the Committee's] deliberations to executive influence." *Gravel*, 408 U.S. at 625. While information about how the Committee wrote the Report may arguably still be protected by the Speech or Debate Clause, the Report itself would not.

As noted above, there is copious evidence that SSCI never intended for this to be a deliberative document, let alone a privileged one. The stated intention of conducting the investigation in the first place, years before the Report was compiled, was "that this examination be used 'as broadly as appropriate to help make sure that this experience is never repeated.'" *Musgrave I* at *3. The very first thing that SSCI did upon completing the first final draft of the Report was to send it to the White House and various Executive Branch agencies for comment. S. Rept. 113-288 at viii. After addressing many of these comments, SSCI released the final draft of the Report again to various Executive Branch entities in 2014. SSCI wrote a report which "did not make specific recommendations," *id.* at 7, but was

16

instead written so "[t]his and future Administrations should use this Study to guide future programs, correct past mistakes, increase oversight of CIA representations to policymakers, and ensure coercive interrogation practices are not used by our government again." *Id.* at viii. The SSCI Chair officially told the President of the United States that "the full report should be made available within the CIA and other components of the Executive Branch for use as broadly as appropriate to help make sure that this experience is never repeated." 1st Feinstein-Obama Ltr. at 1. She later reiterated that this design had been present from the outset and that "there was never any objection to providing the full, official report to the Executive Branch, consistent with appropriate limitations due to classification," adding that realizing "the purpose of the Committee's report . . . depends in part on future Executive Branch decisionmakers having and utilizing a comprehensive record of this program, in far more detail than what we were able to provide in the now declassified and released Executive Summary." 2d Feinstein-Obama Ltr. at 1.

Simply put, the only reason that a sanitized version of the full Report has not already been released is due to a confluence of two events. First, the Committee which commissioned the Report determined that it was more in the public interest to fast-track declassification of the Executive Summary and other related portions, rather than hold up the release of those portions while the entire 6,700-page report was reviewed for declassification by multiple Executive Branch agencies, with the

17

stated intention at the time of releasing the remainder of the Report at a future date.

Second, the Senate—and therefore SSCI—switched hands politically soon after,

and the incoming Republican Chair disagreed with all of the relevant decisions

reached by his predecessor and her Democratic committee, and so he attempted to

undo all the Committee's hard work and bury the Report. However, this Court

cannot allow a committee constituted *after the Report was completed and*

*disseminated* to rewrite history and claim that the Report is a privileged

deliberative document when all the contemporaneous evidence paints a clear

picture that the Committee that actually commissioned and wrote the Report

intended for it to be widely used outside Congress.

Before moving to the next subject, it is important to correct an erroneous

inference that the District Court drew about the alleged deliberative nature of the

Report which directly affects this analysis. The District Court wrote that

"defendants confirm that 'the Senate enacted legislation containing limitation on

interrogation techniques used upon detainees' within a year of the full Report's

release to the Senate." *Musgrave I* at *11. However, as Sen. Feinstein's

contemporaneous foreword explains, the Report made no recommendations, and

she made recommendations *on her own* after it was completed. S. Rept. 113-288 at

7. The Report's stated purpose[3] was not to aid legislative deliberation, but to *create a record for the Executive Branch and the public*. The fact that some Members of Congress then used the information from that record to inform legislation does not convert the Report into a deliberative privileged document any more than a constituent's letter to a Member of Congress about an issue is converted into a deliberative privileged document if the Member then includes the information contained within in future legislation.

It is important to also briefly address the District Court's characterization of this Court's decision in *ACLU v. CIA*. The District Court rejected the proffered evidence of the *amicus curiae* brief filed by Sen. Jay Rockefeller in that case, which was filed with this Court to demonstrate that SSCI did not intend to maintain control over the Report. *Id.* The District Court relied on the fact that this Court rejected Sen. Rockefeller's argument, but drew the wrong conclusion from that rejection. This Court held that SSCI intended to control the Report *as opposed to letting it be considered an agency record*. That is not the same as holding that

---

[3] The District Court also reasoned that the Supreme Court's observation in *Eastland v. U.S. Servicemen's Fund* that "in determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it" precludes looking to SSCI's reasons for commissioning the Report, *Musgrave I* at *12 n.5 (quoting 421 U.S. 491, 508 (1975)), but that is a false equivalency. Musgrave is not arguing that the Report was not *legitimate*; he is arguing that it was not *deliberative*, and that question very much turns on the Committee's contemporaneous intentions.

SSCI intended for the Report to be considered privileged and deliberative material protected by the Speech or Debate Clause. Simply holding that SSCI demonstrated an intent to later determine "if and when to publicly disseminate the full Report" only places control of the document within the Senate and not the Executive Branch; it does not then make the document immune to common law requests for it because of the Speech or Debate Clause.

In short, this Court has already identified the fundamental issue at the heart of this case: "the legislative privilege is 'absolute' where it applies at all." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995) (quoting *Eastland*, 421 U.S. at 509). Put another way, there are cases where it does not "appl[y] at all," and in those cases, questions of its nature are moot. This is such a case. The legislative privilege does not apply here because the Report is not and was never intended to be deliberative, and that is the deciding factor.

## III. THE DISTRICT COURT ERRED BY HOLDING THAT THE REPORT WAS NOT A PUBLIC RECORD

Most of the District Court's reasoning on this question is based on the erroneous conclusion that the Report was a deliberative product, and so this matter can be easily dispensed with for the same reasons as the Speech or Debate Clause above. The District Court held that "[t]he Report was . . . a preliminary and advisory step to gather information pertinent to the Committee's task of 'oversee[ing] and mak[ing] continuing studies of the intelligence activities and

programs of the United States Government' in an effort to submit 'appropriate proposals for legislation' to the Senate," *Musgrave I* at *24, but this was entirely based on SSCI's false implications about the nature of the Report and the relationship between it and the legislation which came later. Sen. Feinstein explained *many times* how the purpose of the Report was not focused on the legislative process, and the District Court dismissed all of that evidence, instead falling prey to the fallacy of *post hoc ergo propter hoc*. When one removes this factor from the equation, the problem with the District Court's conclusion that the Report "does not qualify as a public record subject to the common-law right of public access," *id.*, becomes immediately obvious. The fact that "the Report was preliminary to any final recommendation or proposed legislation" does not mean that "this action lacks the legal significance to constitute a 'public record' to which the right of public access attaches." *Id.* at *25. Every document is preliminary to *something*, and this interpretation effectively removes every document created by Congress from the common law right of access, which this Court has held is not the case.

The District Court erroneously relies on this Court's statement that the definition of "public record" excludes "the preliminary materials upon which an official relied in making a decision or other writings incidental to the decision itself." *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897, 906 (D.C. Cir.

1996). However, this reasoning only makes sense if one assumes that "the decision" in question was "any final recommendation or proposed legislation," which in this case it was not. The issuance, publication, and dissemination of the Report *was* "the decision," as shown above, which makes the Report a "public record" by the District Court's own logic, not to mention this Court's.

## IV.    COROLLARY ISSUES

Two other issues with the District Court's opinion warrant brief treatment here. First, the District Court held that the Government's interest in secrecy outweighs the public's interest in disclosure, but this conclusion was based solely on the fact that the Report is currently classified. *See Musgrave I* at *26. However, in doing so, it ignored the fact that Musgrave openly admitted that he expected that a redacted version would be released, and that he only sought the full Report so that the redaction process would begin. This was a very curious conclusion for the District Court to reach, after it previously stated that Musgrave's request for "disclosure of the full Report with redactions of classified information" was moot "because jurisdiction over this suit is lacking." *Id.* at *12 n.6. In other words, the District Court based its conclusion regarding the Government's interest in secrecy solely on the previous conclusion that the Speech or Debate Clause removed the court's jurisdiction. If this Court rejects the Speech or Debate Clause argument, then it should have no problem finding that the public's interest in disclosure of

reasonably segregable unclassified information—such as all the information included in the already-released portions—outweighs the Government's interest in keeping that unclassified and previously officially disclosed information secret.

Secondly, the District Court held that the lack of subject matter jurisdiction due to the Speech or Debate Clause barred Musgrave's request for limited discovery in lieu of dismissal. *Id.* at *26 n.12. This holding suffers from a different infirmity, namely, that the purpose of the limited discovery would be to determine if subject matter jurisdiction exists. This is a well-established process in such cases as this one, and the Court would be well within its authority to authorize limited discovery to ascertain the relevant facts and support or refute the plausibility of Musgrave's claims. The District Court could also hold a preliminary hearing to adduce relevant evidence.

Federal Rule of Civil Procedure 26(b)(1) covers formal written discovery or deposition testimony, stating: "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Rule 12(i) applies if the Court simply wishes to allow examination of an SSCI official, authorizing a Court to use a preliminary hearing "to determine jurisdictional as well as other threshold issues." *Kregler v. City of N.Y.*, 608 F. Supp. 2d 465, 475 (S.D.N.Y. 2009). As explained in *Kregler*:

> [A]cknowledging that this case presents a close call, to minimize additional motion practice at this stage and avert potentially

23

unnecessary extensive discovery, the Court proposes two steps intended to achieve the "amplication" of factual allegations by means of a "flesh[ing] out" procedure such as that suggested in *Iqbal*. 490 F.3d at 158. First, the Court will exercise its discretion pursuant to Rule 12(i) to schedule a preliminary hearing at which the parties may present the testimony of live witnesses and other evidence limited to Defendants' objections to the pleadings, specifically the threshold legal issues upon which, under the *Twombly* and *Iqbal* plausibility test, the sufficiency of Kregler's . . . claim is grounded. . . . As regards matters involving factual issues that bear on the subject of the hearing the Court may consider affidavits, depositions or documents, or testimony presented orally.

*Id. See also Rivera-Gomez v. de Castro*, 900 F.2d 1, 2 (1st Cir. 1990) (noting that Rule 12(i) "can be an excellent device for conserving time, expense, and scarce judicial resources by targeting early resolution of threshold issues"). Such a procedure would allow the undersigned to question an SSCI official under oath in the District Court's presence, which would ideally adduce the information the District Court would need to make an informed ruling.

Regardless of which approach the Court might choose, SSCI's failure to proffer definitive evidence on any issues in controversy, coupled with the fact that the relevant evidence on this issue rests solely with the Government, means that Musgrave should be given the opportunity to obtain and adduce relevant evidence without imposing an onerous discovery burden on SSCI. This is especially appropriate since the evidence sought would be limited to information about the purpose of the Torture Report and the exchanges SSCI had with the Executive

Branch about it, which would not be considered privileged material subject to the

Speech or Debate Clause.

Discovery on these topics could be accomplished in part through the use of

interrogatories, document requests, and requests for admissions. In the final

analysis, however, Musgrave would likely need to conduct targeted depositions of

individuals who can speak with personal knowledge. Documents, while certainly

probative, do not address sufficiently how SSCI actually acted during the relevant

time periods.

## **CONCLUSION**

For all of the foregoing reasons, the Court should reverse and/or remand this

case.

Date: March 4, 2023

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of March, 2023, I filed the foregoing with the Court's Electronic Case Filing system, causing a copy to be served via electronic mail to Appellees' counsel of record.

Date: March 4, 2023

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing filing contains 5,977 words, and was prepared in 14-point Times New Roman font using Microsoft Word 2016.

<u>/s/ Kelly B. McClanahan</u>
Kelly B. McClanahan, Esq.

27